**RUBBERMAID, INCORPORATED,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 76–1830.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1977.

Decided May 4, 1978.

Norman Diamond, David Bonderman, Arnold & Porter, Washington, D. C., for petitioner.

Robert J. Lewis, Gen. Counsel, F. T. C., W. Baldwin Ogden, Jr., Gerald Harwood, Washington, D. C., for respondent.

Before PECK and MERRITT, Circuit Judges, and THORNTON, District Judge.*

MERRITT, Circuit Judge.

This appeal raises a rather narrow and technical question concerning the scope of an exception to the anti-trust laws allowing resale price maintenance, a question not likely to arise again because Congress has now prohibited resale price maintenance altogether by repealing the McGuire and Miller-Tydings Acts.[1] The petitioner Rubbermaid, Inc., seeks review of· a decision and order of the Federal Trade Commission. In 1973 the Commission filed a complaint alleging that Rubbermaid had violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, by entering into certain agreements with wholesalers who marketed Rubbermaid products. The agreement served to maintain prices at the retail level. On cross motions for summary decision, the Administrative Law Judge found in favor of the Commission. The Commission affirmed the decision and issued an order to cease and desist. Rubbermaid claims that the agreements in question were exempt from the general anti-

---

\* Honorable Thomas P. Thornton, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. 66 Stat. 631–32 (1952), *formerly* 15 U.S.C. §§ 45(a)(2)–(a)(5), *repealed* 89 Stat. 801 (1975); 50 Stat. 693–94 (1937), *formerly* 15 U.S.C. § 1, *repealed* 89 Stat. 801 (1975).

trust laws under the fair trade provisions of the McGuire Act until it was repealed in 1975. Rubbermaid further claims that the case is now moot, in light of the repeal of the McGuire Act and the company's discontinuance of the practices in question. Finally, it says that even if a violation occurred, the Commission's order is too broad and burdensome.

## I. STATEMENT OF THE CASE

The underlying facts are not in dispute. Rubbermaid, a manufacturer and wholesaler of rubber, plastic, and coated wire household products, had a fair trade program until July 1, 1975. It sold Rubbermaid products directly to retailers and also to other wholesalers. The *retail* contracts stipulated that where legal under state law, the retailers would maintain fair trade prices established by Rubbermaid in reselling Rubbermaid's goods to consumers. The *wholesale* contracts did not directly restrict the wholesalers' freedom to set their own resale prices, but imposed "customer restriction requirements" which bound the wholesalers to sell, in states with fair trade laws, only to retailers which had executed Rubbermaid fair trade agreements.

The Commission's complaint was addressed solely to the customer restriction requirements in the wholesale contracts. The provisions were alleged to be illegal on the grounds that they were horizontal agreements which restricted the wholesaler's right to deal and were designed to fix prices at the retail level.

Rubbermaid argues that the McGuire Act exempted from the general antitrust laws Rubbermaid's entire fair trade program and that the "vendee clause," italicized below, specifically exempted the company's wholesale contracts. 15 U.S.C. § 45(a)(2) provided:

Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, *or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices*, for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale. [Emphasis added.]

The Commission found that this exemption did not apply to Rubbermaid's wholesale contracts, relying on the proviso which was set forth in 15 U.S.C. § 45(a)(5):

Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other.

It is undisputed that Rubbermaid's wholesale contracts violated the antitrust laws unless the contracts fell under the fair trade exemption of the McGuire Act.[2] Whether a violation occurred therefore turns solely on the availability of that exemption, as qualified by the proviso. Before reaching the merits of this issue, however, we must first address Rubbermaid's claim that the repeal of the McGuire Act has mooted the proceedings.

---

**2.** *See e. g., United States v. Container Corp.*, 393 U.S. 333, 337, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969); *Simpson v. Union Oil Co.*, 377 U.S. 13, 16–22, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 721, 64 S.Ct. 805, 88 L.Ed. 1024 (1944); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221–23, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

## II. MOOTNESS

■ We do not agree that the repeal of the McGuire Act renders this case moot. The Commission's cease and desist order was based on an alleged violation of 15 U.S.C. §§ 1 and 45(a)(1).[3] These provisions remain in effect. If a violation occurred in the past, the repeal of the McGuire Act exemption does not affect the validity of the Commission's order or this Court's duty to enforce it.[4] Rubbermaid has lost a plausible defense for the future, but the Commission has not lost any cause of action based on past violations. If Rubbermaid's contracts were unlawful at the time that the exemption was available, then they would be even more clearly illegal now that the exemption has been repealed.

Rubbermaid relies on *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) in claiming that this case is moot. There, plaintiff challenged as unconstitutional a statutory exemption which was subsequently repealed. The Supreme Court held the issue of constitutionality to be a moot question and dismissed the case. Here, on the other hand, it is the Commission's order, not the repealed exemption which is the subject of Rubbermaid's lawsuit; Rubbermaid, in fact, relies on the repealed exemption to justify its former conduct, while the Commission's order is founded on other, unrepealed, provisions of the law. Rubbermaid has lost a future defense, but that does not end the present dispute.

■ Rubbermaid makes several further arguments based on the repeal of the McGuire Act, but its central contention may be simply stated. In essence, Rubbermaid says its fair trade practices have all been discontinued with the repeal of the McGuire Act and that there is no need for any further remedy. But a lawsuit does not ordinarily become moot because one side gives up, unless the parties have agreed on a settlement.

■ While a suit to enjoin future illegal action may be moot if it is certain that such violations cannot recur, it is likewise well-established that discontinuance of past illegal practices does not necessarily render moot a controversy over an injunction against similar future actions. *See, e. g., United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 202–03, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Doherty, Clifford, Steers & Shenfield, Inc. v. F.T.C.*, 392 F.2d 921, 927 (6th Cir. 1968); *Carter Products, Inc. v. F.T.C.*, 323 F.2d 523, 531 (5th Cir. 1963). The crucial question, of course, is to what degree one can be certain that the same or related practices will not recur. Here, the Commission, having found that illegal acts had occurred in the past, further concluded that there was at least some possibility of similar future acts from which the public should be protected. The Commission may be properly concerned not only with the open and formal implementation of agreements exactly like those entered into in the past, but also with the possibility that past unlawful conduct will be perpetuated in some more subtle form in the future.[5] Here, the Commission does not merely seek an end to Rubbermaid's formal

---

3. Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1976), provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Section 1 of the Sherman Act, 15 U.S.C. § 1 (1976), provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

4. *See F.T.C. v. Goodyear Tire & Rubber Co.*, 304 U.S. 257, 259–60, 58 S.Ct. 863, 82 L.Ed. 1326 (1938).

5. "If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its roadblock to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity." *F.T.C. v. Ruberoid Co.*, 343 U.S. 470, 473, 72 S.Ct. 800, 803, 96 L.Ed. 1081 (1952); *see also Doherty, Clifford, Steers & Shenfield, Inc.*, 392 F.2d 921, 926 (6th Cir. 1968).

fair trade program, nor does the Commission simply ask that Rubbermaid's customers be informed that the fair trade program is no longer in effect. The Commission seeks to preclude through imposition of specific requirements any of a variety of anticompetitive effects similar to those allegedly used in the past, as well as to impose remedial measures to counteract the effects of past practices.

■ A company bears a heavy burden in showing that past conduct will not be repeated. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). Moreover, a Commission finding that future illegal conduct is likely cannot be disturbed by this court unless the Commission has clearly abused its discretion. We decline to find that the likelihood of similar conduct in the future is so remote that the present case is moot.

### III. VIOLATION OF THE ANTITRUST LAWS

■ At the time the Rubbermaid wholesale contracts were in effect, the McGuire Act established an exemption from the antitrust laws for "contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum

or stipulated prices, for the resale of a commodity." However, this exemption explicitly did not apply to "contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity . . . between wholesalers . . . or between persons, firms, or corporations in competition with each other." Rubbermaid concedes that it acted as a wholesaler as well as a manufacturer and that it sold its products to competing wholesalers. Its wholesale contracts were clearly "contracts or agreements . . . between wholesalers." [6] The central question, therefore, is whether Rubbermaid's wholesale contracts provided for the "establishment or maintenance of minimum or stipulated resale prices." The wholesale contracts did not prescribe the wholesaler's resale prices but rather required a boycott of retailers that did not adhere to fixed prices. Thus the contract was a horizontal agreement between wholesalers, but the purpose was to fix prices at the retail level. Rubbermaid contends that the statutory proviso, in referring to "resale prices," addresses only the resale prices of the contracting parties, not the resale prices of third parties to whom the goods are sold.

Both parties rely on the nature of the modifications made by the McGuire Act in the Miller-Tydings Act.[7] The McGuire Act modified the earlier Act's fair trade exemption to include a "vendee clause," so that

---

**6.** Rubbermaid contends that "between wholesalers" modifies "resale prices," rather than "contracts or agreements." This is a strained reading in our view, and contrary to the plain meaning of the section.

**7.** The Miller-Tydings Act, 50 Stat. 693–94 (1937), *formerly* 15 U.S.C. § 1, *repealed* 89 Stat. 801 (1975), qualified § 1 of the Sherman Act as follows:

*Provided*, That nothing contained in sections 1 to 7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are

lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45 of this title: *Provided further*, That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other.

the exemption would apply not simply to contracts or agreements "prescribing . . . prices" but also explicitly to agreements "requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices." The legislative history suggests that Congress intended to clarify, not to change, the exemption by adding the vendee clause, and that the notion of "prescribing prices" was originally intended to encompass the customer boycott arrangements subsequently described in the vendee clause.[8]

The proviso in the Miller-Tydings Act which withdrew agreements between competitors from the scope of the exemption was not amended by the McGuire Act to include a vendee clause. The original proviso referred to "establishment or maintenance" of resale prices rather than to agreements "prescribing" prices. This language remained unchanged in the McGuire Act.

Rubbermaid argues that Congress' failure to include a vendee clause in the proviso manifests a specific intent to exclude customer restriction requirements from its scope. It contends, in other words, that the McGuire Act made agreements between competitors illegal if the purpose was to fix the competitors' prices, but legal if the purpose was to arrange a boycott of retailers that refused to adhere to fixed prices.

We cannot accept this interpretation. An ordinary reading of the proviso indicates that it was intended to cover all of the types of price fixing agreements referred to in the exemption, and to withdraw them from the exemption if made between competitors. The emphasis in the proviso is on the identity of the contracting parties. This interpretation is faithful to the plain meaning of the McGuire Act, the intent of Congress in formulating a fair trade exemption, and the general policies of the antitrust laws. In passing the McGuire

Act, Congress intended to make legal certain vertical arrangements in order to give a manufacturer power over the ultimate market prices of its products. However, Congress also made clear in the proviso that by establishing an exception for these specific vertical agreements, it in no way intended to countenance horizontal arrangements, even if made for the same or similar purposes. The agreements with wholesalers in this case were horizontal restraints which limited the wholesalers' freedom to sell to any customers they chose. The agreements meant that the wholesalers could compete with Rubbermaid only on Rubbermaid's terms.

The basic issue is whether the general purpose of the McGuire Act exemption—to allow a vendor to control the ultimate consumer prices of its products—was so broad that it would allow two wholesalers to agree on common policies and to work together in order to maintain prices at the retail level. We think that the exemption was not meant to have such broad anti-competitive implications, and that the purpose of the proviso was to specifically prevent the exemption from having horizontal repercussions. As the repeal of the McGuire Act suggests, the free market principle is a more stable concept in our law than resale price maintenance, and it should be preferred in case of doubt.

Consequently, we must conclude that Rubbermaid's agreements with other wholesalers were illegal under the antitrust laws and were not exempt at the time they were made by the terms of the McGuire Act.

## IV. REMEDY

█ Once a violation of the antitrust laws has been shown, the Commission has wide latitude in formulating an appropriate remedy.[9] However, it is also well-estab-

---

8. *See* Hearings on H.R. 5767 Before a Subcomm. of the House Comm. on Interstate and Foreign Commerce, 82d Cong., 2d Sess. 174, 221 (1952); *see also, Sunbeam Corp. v. Payless Drug Stores*, 113 F.Supp. 31, 39–40 (N.D.Cal. 1953).

9. *E. g., United States v. E. I. duPont de Nemours & Co.*, 366 U.S. 316, 334, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961); *F.T.C. v. Mandel Bros.*, 359 U.S. 385, 392–93, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959); *Jacob Siegel Co. v. F.T.C.*, 327 U.S. 608, 611–13, 66 S.Ct. 758, 90 L.Ed. 888 (1946).

lished that the Court of Appeals may modify a Commission order which is not in the public interest.[10] We must therefore consider what the possible danger to the public interest is and whether the scope and severity of the Commission's order is related to the danger presented.

On the one hand, there appears to be no dispute that Rubbermaid abandoned its formal fair trade program with respect to both wholesalers and retailers in 1975, and that it does not intend to resume such a program now that the McGuire Act, which formerly provided a justification for vertical price-fixing, has been repealed. On the other hand, the Commission could reasonably conclude that Rubbermaid's original violation raised the suspicion that it might in more subtle ways seek to perpetuate agreements which would serve to maintain the resale prices of Rubbermaid goods. This is particularly true because Rubbermaid did not discontinue its wholesale agreements until well after the Commission's complaint was filed. Moreover, it is reasonable to conclude that the effects of Rubbermaid's illegal agreements with wholesalers may tend to be perpetuated in practice unless affirmative measures are taken to eradicate them.

The Commission's order addresses a broader set of practices than the specific violations which were found. It prohibits price maintenance agreements with retailers as well as with wholesalers, and it prohibits a wide variety of possible coercive actions by Rubbermaid to induce resale price maintenance. However, we find that all of the requirements imposed are reasonably related to the nature of the violations found and to possible continuing effects of those violations. We also conclude that the dangers of subtle efforts at price maintenance in the future are not so remote that the Commission's order should be found to be unreasonably broad.

10. Some courts have held, in particular, that an order should be limited to prohibiting the specific type of activity which was involved in the original violation if the danger of recurrent violations is extremely slim. *E. g., R. H. Macy & Co. v. F.T.C.*, 326 F.2d 445, 450 (2d Cir.

1964); *Country Tweeds, Inc. v. F.T.C.*, 326 F.2d 144, 149 (2d Cir. 1964); *Grand Union Co. v. F.T.C.*, 300 F.2d 92, 100 (2d Cir. 1962); *Swanee Paper Corp. v. F.T.C.*, 291 F.2d 833, 838 (2d Cir. 1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).