## FEDERAL TRADE COMMISSION
### v.
## VIRGINIA HOMES MANUFACTURING CORPORATION.
### Civ. No. Y–79–913.

United States District Court,
D. Maryland.

Jan. 21, 1981.

Donald H. Feige, Asst. U. S. Atty., Balti-more, Md., for plaintiff.

Michael N. Sohn, W. Dennis Cross, David M. Fitzgerald, and Theodore H. Hoppock, Washington, D. C., of counsel; Leonard S. Homa, Rockville, Md., for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

This case presents novel questions regarding the scope of § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), as applied to the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) and the Disclosure Rule (16 C.F.R. § 701) promulgated thereunder. The defendant, Virginia Homes, is a company engaged in the manufacture and distribution of mobile homes. These homes are sold to consumers through 69 independent dealers in 11 states. From June of 1975 until October, 1978, each sale of a mobile home was accompanied by a Virginia Homes warranty [Old Warranty]. On October 20, 1978, the defendant modified this Old Warranty at the request of the Federal Trade Commission, but refused to notify the holders of the Old Warranty of

the modifications. Contending that the still-outstanding Old Warranties violate the FTC Act, Magnuson-Moss, and the Disclosure Rule, the FTC seeks two types of injunctive relief from this Court. First, plaintiff requests that a permanent injunction against future violations of FTC laws be issued against Virginia Homes. Second, the FTC requests an injunction compelling the defendant to notify all Old Warranty holders that they might possess new, more expansive rights under the revised warrant [New Warranty.] The Commission asserts that this Court has power to grant both of these requests pursuant to § 13(b) of the Federal Trade Commission Act, and has moved for summary judgment. For the reasons set forth below, this request for summary judgment will be granted in full.

The principal legal issues presented in this action center around a proper interpretation of § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). This section reads:

> (b) Whenever the Commission has reason to believe—
>
> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—

the Commission by any of its attorneys designated by it for such purposes may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided, further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any such suit shall be brought in the district in which such person, partnership, or corporation resides or transacts business.

These issues will be dealt with in turn.[1]

*Issue One:* Can the FTC seek permanent injunctive relief under § 13(b) on account of alleged violations of Magnuson-Moss?

■ Virginia Homes initially submits that the violations of law, if any, contained in the Old Warranty are violations of the Magnuson-Moss Warranty Act and nothing else. Accordingly, defendant contends that the Government should have proceeded under Magnuson-Moss and not under the Trade Commission Act. § 110(c) of the Warranty Act, 15 U.S.C. § 2301(c), autho-

---

1. Two of defendant's more obfuscatory arguments can be summarily dismissed. First, the defendant argues that a permanent injunction should not be issued in this case because the FTC has never before attempted to use it's permanent injunction power. Of course, the fact that an agency has not asserted a power over a period of years is not proof that the agency lacks such powers. *Warner-Lambert Co. v. FTC,* 562 F.2d 749 (D.C.Cir.1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978). Second, defendant suggests that the FTC cannot unilaterally move against it without also moving against other similarly-situated mobile home manufacturers. While it is

true that the FTC does not have unbridled power to institute proceedings which will arbitrarily destroy one of many law violators in an industry, it is also true that the Commission *alone* is empowered to develop the enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically. *FTC v. Universal-Rundle Corp.,* 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967). In the opinion of this Court, the FTC's decision to proceed against Virginia Homes was a legitimate exercise of prosecutorial discretion and will not be disturbed.

rizes the issuance of *preliminary* injunctions against Magnuson-Moss violators, but does not authorize the issuance of *permanent* injunctions. Virginia Homes thus argues that the FTC's request for a permanent injunction is inappropriate on the facts of this case. The Government counters that the alleged violations are independent violations of the Federal Trade Commission Act as well as violations of Magnuson-Moss, and further argues that § 13(b) is an appropriate mechanism for enforcing Magnuson-Moss violations in any event.

On this latter point, the Government is most certainly correct. § 110(b) of the Warranty Act, 15 U.S.C. § 2310(b), clearly states that any violation of Magnuson-Moss is also to be considered a violation of § 5 of the FTC Act, 15 U.S.C. § 45(a)(1). It is beyond dispute that § 13(b) is a proper means for seeking remedy from § 5 violations. Furthermore, § 13(b) by its very terms applies to violations of "any provision of law enforced by the FTC." It is likewise clear that Magnuson-Moss is such a "provision of law" enforced by the Commission. For these reasons, this Court holds that the Government properly proceeded under § 13(b) in bringing the present action for permanent injunction relief, even if the sole violations involved are violations of Magnuson-Moss.

*Issue Two:* Can the FTC seek compulsory notification under § 13(b)?

■ Virginia Homes next argues that the government should not be permitted to seek compulsory notice under § 13(b). It is conceded by the parties that notice is nowhere expressly authorized by § 13(b). It is further evident that only 19(b) of the Federal Trade Commission Act expressly authorizes "public notification respecting [a] rule violation or [an] unfair or deceptive act or practice, as the case may be." From this background, Virginia Homes asserts that the Government should not be permitted to seek a remedy under one section of the FTC Act which is authorized by an entirely distinct section of the same Act.

This Court finds the defendant's arguments unpersuasive. To begin, it should be noted that § 57b(b) is concerned with an entirely different procedural scenario than is presented in this case. That section authorizes compulsory notice in those circumstances where the FTC has issued a cease-and-desist order and subsequently seeks enforcement from the federal district courts. In the instant matter the FTC has chosen to proceed not via the cease-and-desist order route, but rather to seek relief directly from the federal court. Any effort on the part of the Government to invoke § 19(b) as authority for its requested relief would, of course, have been ill-advised.

The question remains, however, whether § 13(b) itself authorizes compelled notice. A review of a number of cases concerning the *Commission's* authority to issue various orders is highly instructive. At one time, the Supreme Court was of the opinion that the FTC's authority did not exceed that expressly conferred by statute. *FTC v. Eastman Kodak Co.*, 274 U.S. 619, 47 S.Ct. 688, 71 L.Ed. 1238 (1927). The more modern trend is decidedly to the contrary. In *FTC v. Dean Foods Co.*, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966), for example, the Court upheld the Commission's power to seek a preliminary injunction against a proposed merger despite the absence of express statutory authority for such a power. In the words of the Supreme Court, "[s]uch ancillary powers have always been treated as essential to the effective discharge of the Commission's responsibilities." *Id.* at 607, 86 S.Ct. at 1744. *See also, Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). More recently, the District of Columbia Circuit Court held that the FTC had the power, under § 19(b), to compel the manufacturers of Listerine to broadcast corrective advertising although such advertising was not expressly authorized by statute. *Warner-Lambert Co. v. FTC*, 562 F.2d 749 (D.C.Cir.1977), *cert. denied*, 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978). These opinions, when viewed in conjunction, make abundantly clear that the Commission has power to shape remedies which go beyond those expressly delegated by Congress.

In the present case, it is the authority of the courts rather than the authority of the Commission which is at issue. The guiding principles, however, should be no less liberal. Indeed, the powers of a court of equity to issue appropriate orders are, if anything, more expansive than the powers of the independent agencies. *FTC v. Eastman Kodak Co., supra.* For these reasons, this Court finds that compulsory notice is implicitly authorized by § 13(b) so long as such notice would be essential to the effective discharge of the Court's responsibilities.[2] The Government is thus entitled to seek such relief.

*Issue Three:* Can the permanent injunctive relief authorized by § 13(b) be granted solely on the basis of *past* violations of the FTC laws?

■ The Government has sought to justify the appropriateness of its requested injunctive relief on two separate theories. First, plaintiff asserts that a permanent injunction and compulsory notice are proper sanctions to remedy the *past* illegal activity of Virginia Homes. This past illegal activity, according to the FTC, consists of defendant's former use of the Old Warranty. Second, and alternatively, the Government claims that the continuing refusal of Virginia Homes to notify current Old Warranty holders is, assuming the Old Warranty is found to be unlawful, a *present* violation of federal law ripe for injunctive relief. Virginia Homes, on the other hand, vigorously contends that its former use of the Old Warranty is not a proper basis for § 13(b) relief for at least three reasons: (1) the Old Warranty has never, up to now, been adjudged unlawful; (2) since the Old Warranty is no longer being issued, the question of its former lawfulness is moot and any judicial determination of its lawfulness *now* would be an advisory opinion; (3) § 13(b) does not permit an injunction based solely upon past violations. Because counsel have viewed this issue as being potentially determinative of the entire lawsuit, their respective arguments will be briefly outlined here. Ultimately, however, the issue whether § 13(b) relief can be granted on the basis of past violations need not be decided, as this Court holds that the failure of Virginia Homes to notify Old Warranty holders of their expanded rights is a *present* violation of the FTC law subject to § 13(b) relief.[3]

§ 13(b)(1) reads in part:

Whenever the Commission has reason to believe—

---

**2.** The court considers inapposite the recent case of *Congoleum Industries, Inc. v. Consumer Product Safety Commission,* 602 F.2d 220 (9th Cir. 1979), which held that the Commission was not authorized to compel notice under either the Consumer Product Safety Act or the Federal Trade Commission Act. The present holding, with regard to this particular issue, is that the *federal district courts* are authorized to compel notice under § 13(b) by virtue of that section's language authorizing the issuance of permanent injunctions in appropriate circumstances. Such a power, in the opinion of this Court, must be implied from the statute in those circumstances where a permanent injunction *without* compelled notice could in no way effectively remedy the violation purportedly enjoined. As will be explained more fully *infra,* the Old Warranty constitutes a continuing violation of Magnuson-Moss and hence could not be effectively remedied absent compelled notification.

Furthermore, this Court respectfully considers the present case to be readily distinguishable from the case of *Heater v. FTC,* 503 F.2d 321 (9th Cir. 1974), relied upon extensively by the *Congoleum* court. In *Heater,* the court set aside a provision of an FTC order which required Heater to refund money to defrauded customers. The Ninth Circuit found no statutory authority for this order. However, in *Heater* there was no continuing fraud; here, the violations of Magnuson-Moss are continuing. In other words, the violations in *Heater* were past; the violations in the *Virginia Homes* matter are present and continuing. While it may very well be true that the FTC lacks the power to impose remedies of the type struck down in *Heater,* it is not necessarily true that the courts likewise lack power to authorize remedies such as compulsory notice, particularly in light of § 13(b)'s express delegation to the courts of authority to issue injunctive decrees of prospective application. The equitable powers of the district courts must certainly be interpreted as being broad enough to remedy continuing and future, as opposed to past (*i. e., Heater*), violations.

**3.** Assuming, of course, that the Old Warranty is unlawful. The various provisions of the Old Warranty will be reviewed in light of existing law in a later portion of this Opinion.

(1) That any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission ... (emphasis supplied).

Citing this underlined language, the defendant contends that a permanent injunction cannot be issued solely on the basis of past violations of FTC laws. The Government counters with two arguments of its own. First, plaintiff claims that the "is ... or is about to" language is not directed at the district court's power to grant *permanent* injunctions, but only at their power to issue *preliminary* injunctions. A careful reading of § 13(b) lends some credence to this view, particularly when § 13(b)(1) is read in conjunction with § 13(b)(2):

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review . . . .

§ 13(b)(2) quite obviously was drafted to apply to preliminary injunctions, and since § 13(b)(1) is joined to § 13(b)(2) by the conjunctive "and," both provisions can be interpreted as applying to preliminary injunctions only. Nevertheless, the defendant forcefully argues that since the power of the district court to issue permanent injunctions is expressly embodied in the same statutory section as is the power to grant preliminary injunctions, the identical "is ... or is about to" standard should apply to each.

The Government's second argument is that an SEC statute with nearly identical "is ... or is about to" language has been construed to authorize permanent injunctive relief on the basis of a "reasonable likelihood of future violations" as discerned from past activity. 15 U.S.C. § 77t(b). However, the cases cited by the plaintiff are not necessarily dispositive of the instant question. For example, in *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1971), the court made the following statement:

... fraudulent past conduct gives rise to an inference of a reasonable expectation of continued violations, (citations omitted); we believe that the drawing of such an inference was particularly appropriate here where appellants did not attempt to cease or undo the effects of their unlawful activity until the institution of an investigation.

Superficially, this language clearly supports the Government's contentions. In *Manor Nursing*, however, none of the "past conduct" referred to in the opinion had been corrected prior to the initiation of the lawsuit for injunctive relief. In the present case, Virginia Homes could suggest that its "past conduct" was corrected a year prior to the filing of the FTC's complaint, and should thus not be the basis for an adverse equitable decree. The unstated fear underlying Virginia Homes' position is that the FTC can wait 3, 5 or even 25 years before seeking a permanent injunction if "past conduct" can be the basis for such equitable relief. This concern is a legitimate one.

In the instant case, however, that concern is misplaced, because Virginia Homes' "past conduct" is not in fact "past" conduct. It is undeniably true that the defendant suspended issuance of the Old Warranty in 1978. Nonetheless, it is also manifestly true that many current holders of the Old Warranty still believe that that warranty accurately defines their present legal rights. The reason this mistaken belief exists is that Virginia Homes has steadfastly refused to notify Old Warranty holders that they may have newer and more expansive rights than are indicated in the pre-1978 document. Assuming that the Old Warranty is unlawful, the sizeable risk exists that Old Warranty holders will not assert their proper legal rights on account of their warranty's misrepresentations. This risk is the precise fear which gave rise to Congress' adoption of the Magnuson-Moss Warranty Act. *See* Senate Commerce Committee Report, S.Rep.No.93–151, 93rd Cong., 1st Sess. (1973). Consequently, by failing to notify current Old Warranty holders, Virginia Homes is openly flouting the Congressional determinations underlying Magnuson-Moss and, inferentially, the Disclosure Rule promulgated thereunder. The total absence of

relevant case law in no way alters the inescapable conclusion that, in light of the Congressional intent, Virginia Homes is *currently* violating the consumer protection laws by consciously permitting an unlawful warranty to remain in present-day circulation. The "is ... or is about to" language of § 13(b)(1) has thus been plainly met.

*Issue Four:* Does the Old Warranty violate any provisions of Magnuson-Moss?

■ The Old Warranty violates numerous specific provisions of Magnuson-Moss and/or the Disclosure Rule.[4] These violations are:

1) § 108(a) of the Warranty Act, 15 U.S.C. § 2308(a), prohibits warrantors from attempting to disclaim implied warranties contrary to law. Defendant concedes that the Old Warranty violates § 108(a) in this respect, but contends that "the failure to comply was limited to the one-year duration of the [written] warranty under Sec. 108(b)." Memorandum of Virginia Homes in Opposition to Motion for Partial Summary Judgment, p. 9. This contention is simply wrong. § 108(b) authorizes a warrantor to limit the duration of implied warranties to the duration of a written warranty of reasonable length "if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b). The Old Warranty contains no such "clear and unmistakable" limitation. Therefore, the Old Warranty did not lawfully limit Virginia Homes' implied warranty obligations. Those obligations, consequently, are to be limited only by the applicable state statutes of limitations.

2) § 103 of the Warranty Act, 15 U.S.C. § 2303, requires that a warranty be clearly and conspicuously designated as either a "full (statement of duration) warranty" or a "limited warranty." The Old Warranty, however, is designated "Manufacturer's Warranty and Limitation of Remedy." An interpretive rule adopted by the FTC states that the terms "full (statement of duration) warranty" and "limited warranty" are the exclusive designations permitted under the Warranty Act, absent a specific exception. 16 C.F.R. § 700.6(a). No exceptions have been created on behalf of Virginia Homes. Thus, the designation "Manufacturer's Warranty and Limitation of Remedy" violates both Magnuson-Moss and the interpretive Rule promulgated thereunder.

3) 16 C.F.R. § 701.3(a)(5) requires that a warranty contain a "step-by-step explanation" of the procedure which a consumer should follow in order to obtain performance of a warranty obligation. Virginia Homes contends that the Old Warranty did not violate this provision because (a) the Old Warranty states that Virginia Homes would remedy any substantial defects in the mobile homes provided it received written notification of such defects within a prescribed time, and (b) the Old Warranty included a perforated, detachable warranty registration card which, on one side, contained Virginia Homes' mailing address. The Government asserts that this piecemeal information does not comprise a "step-by-step" explanation as mandated by 15 C.F.R. § 701.3(a)(5). Rather, it grandiosely alleges that the Old Warranty requires "the consumer to be a detective, by searching every piece of paper related to the Old Warranty, in order to piece together the method by which the consumer might seek to obtain warranty service." Reply Memorandum to Virginia Homes' Opposition to Partial Summary Judgment, p. 4. Although the fears of the government have been grossly overstated, it is nonetheless apparent that the requisite "step-by-step" process was not followed by Virginia Homes in the Old Warranty. Accordingly, that warranty stands in technical violation of § 701.3(a)(5).

4) 16 C.F.R. §§ 701.3(a)(8)–(9) requires a warrantor to provide information, in prescribed language, disclosing that additional limitations may be imposed by state laws on its ability to disclaim or limit certain rights and remedies. Virginia Homes' Old Warranty does not comply with this provision. Defendant argues, however, that the Commission exceeded its authority in promul-

4. The Old Warranty is attached as Appendix "A" of this Opinion.

gating this regulation because the FTC cannot require the use of specific language *in haec verba.* No support for this novel contention is offered, and this Court can find none. To the contrary, 15 U.S.C. § 2302 grants the Commission broad authority to promulgate rules "to improve the adequacy of information available to consumers," and nowhere prohibits the Commission from requiring the use of specific language. This authority, in the Court's view, is sufficient justification for the §§ 701.3(a)(8)–(9) requirements. Moreover, in the instant case the Old Warranty fails to include *in any form* the disclosure that purchasers might have significantly greater rights under the state law than those purportedly granted by the Old Warranty. For these reasons, a violation of 16 C.F.R. §§ 701.3(a)(8)–(9) is evident.

5) 16 C.F.R. § 701.4 requires that where a warrantor has made it appear that the return of an owner's registration card is a condition precedent to obtaining warranty coverage, but in fact such is not a requirement, the warrantor must disclose that the card's return is not a condition precedent to obtaining warranty protections. Virginia Homes admits that it represented to purchasers receiving the Old Warranty that they would have no warranty rights unless they returned the warranty registration card. Virginia Homes states, however, that in fact it is not their policy to require timely return as a condition precedent. As defendant puts it, "the FTC is complaining that Virginia Homes violated the law by giving more warranty service than it promised." Memorandum of Virginia Homes in Opposition to Motion for Partial Summary Judgment at 11. In a sense the defendant is correct—had it refused to honor warran-

ty requests of non card-returning purchasers, the FTC might not have had grounds for complaint. However, it is also true that the rule governing owner registration cards is intended to assure that purchasers will not be misled into *not* requesting warranty service because a warranty deceptively and erroneously states that service is conditioned on return of an owner's registration card. In the present case, it is clear that purchasers might be misled by the card-return dictates of the Old Warranty. Thus, the misrepresentation violates § 701.4.

At this point, it is perhaps useful to review what has been determined so far. By permitting the unlawful Old Warranty to remain in circulation, Virginia Homes is currently violating both the Magnuson-Moss Warranty Act and the Disclosure Rule. As a result of these current violations, the government is entitled to *seek* permanent injunctive relief under § 13(b) of the Federal Trade Commission Act.[5] This permanent injunctive relief can include compulsory notification if such notification would be necessary to effectuate the order of the Court. It remains, therefore, only to determine whether the § 13(b) relief requested by the Government is appropriate on the present facts.

*Issue Five:* Should a permanent injunction be issued, and compulsory notification ordered, by this Court?

The Government has contended that a permanent injunction should be issued by this Court upon proof that (1) the defendant is violating the law, and (2) an injunction would be in the public interest. In other words, the Government's position is that it is not required to satisfy the equity requirements of private litigation in order to establish the propriety of injunctive re-

---

5. As discussed under Issue One, violations of Magnuson-Moss are also violations of § 5 of the Federal Trade Commission Act enforceable by § 13(b). The leading § 5 case of *Montgomery Ward & Co. v. FTC,* 379 F.2d 666 (7th Cir. 1967), does not require that Virginia Homes be provided the opportunity to show, at an evidentiary hearing, that the Old Warranty is not actually deceptive. In *Ward,* a false *advertising* case, the defendant was permitted to show that the advertising was not actually deceptive although it undeniably possessed a "capacity to deceive." In the present case, however, unlike in *Ward,* Congress has determined for us that the violations of law contained in the Old Warranty are actually deceptive by enacting Magnuson-Moss, and by unequivocally announcing that Warranty Act violations are likewise § 5 violations. 15 U.S.C. § 2310(b). No such Congressional determination with respect to advertising was available to guide the court in *Ward.*

lief. Virginia Homes contends, to the contrary, that this Court should take into account the more traditional equitable factors[6] before authorizing § 13(b) relief. As these traditional factors cannot be fully evaluated without the aid of an evidentiary hearing, Virginia Homes concludes that § 13(b) relief should not be ordered at the summary judgment stage of these proceedings.

■ Once again, the Government's position is the proper one. The rule in this Circuit, as well as in others, is that a permanent injunction must be issued in a government injunction suit if such is necessary to effectuate the manifest objectives of specific Congressional legislation. *Shafer v. United States*, 229 F.2d 124, 128 (4th Cir.), *cert. denied*, 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460 (1956); *SEC v. Advance Growth Capital Corp.*, 470 F.2d 40, 53 (7th Cir. 1972). No balancing of the equities is required, or even permitted, in such circumstances. This conclusion is further buttressed by the Supreme Court's decision in *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944) which, despite some language superficially helpful to the defense position, concludes with the categorical statement that a court's discretion in Government injunction suits:

> . . . must be exercised in light of the large objectives of the [Congressional]

Act. For the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in these cases.

*Hecht Co. v. Bowles, supra*, at 331, 64 S.Ct. at 592. As has previously been demonstrated, Virginia Homes is openly flouting the manifest objectives of Magnuson-Moss by failing to notify Old Warranty holders of their possible additional legal rights. Accordingly, a permanent injunction will be issued.

■ Virginia Homes will also be affirmatively ordered to notify Old Warranty holders of their possible additional rights. Clearly, without such compulsory notification, any permanent injunction issued against the defendant would be illusory in its effect. Virginia Homes' failure to notify, a continuing violation of the FTC laws, can only be remedied by prompt notification. Under these circumstances, compulsory notice is essential to the effective discharge of this Court's responsibilities, and must be required.

Counsel for the Federal Trade Commission are directed to prepare and file a proposed order within five (5) days of this date and counsel for the defendants will have five (5) days to respond thereto. The Court will then issue an appropriate order.

SO ORDERED.

## APPENDIX A

"SPECIFICATIONS ONE (A)(B)(C)"

# VIRGINIA HOMES MANUFACTURING CORP.

### Manufacturer's Warranty and Limitation of Remedy

Virginia Homes Manufacturing Corp. (Virginia Homes), the manufacturer, warrants to the original retail purchaser of this home that such home is free from any substantial defects in materials and workmanship. Virginia Homes shall, at the site of the home if possible, repair or replace, in its sole discretion, any substantial defects in materials or workmanship which becomes evident within one year after the original retail purchaser takes delive-

---

6. These traditional factors include the defendant's good faith and the adverse consequences of an equitable decree upon defendant's business interests, among others.

ry of this home; provided that Virginia Homes has received written notification of such defects within one year and ten days after the original retail purchaser takes delivery. This warranty shall be in force only if the attached warranty registration card has been completed, detached and mailed within (7) days after the original retail purchase. This warranty shall cease to be effective if the home shall have been altered without Virginia Homes's express written consent or if the home has been abused, neglected, abandoned, otherwise not cared for in a reasonable manner or used other than for residential purposes. This warranty does not apply to appliances, heating units of any type or any other products manufactured and, or warranted by others.

THE FOREGOING WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. No employee, dealer, agent or other person is authorized by Virginia Homes to make, on Virginia Homes's behalf, any warrenty or representation with respect to this home, other than as expressly contained herein. In no event shall Virginia Homes be liable for incidental or consequential damages.

Virginia Homes reserves the right to make changes at any time in the design and specifications of its product without imposing on itself any liability to make corresponding changes to its product theretofore manufactured.

### Warranty Registration Card

No _____ Model _____
Name _____ Date of Purchase _____
of Purchaser _____
_____
_____ State _____
Phone Number _____
_____
Home Checked and Serviced by Dealer at Time of Delivery _____
or Opinion Was Dealer Service Adequate and Satisfactory _____
_____ CUSTOMER'S SIGNATURE _____
Fill In Completely---Mail Within 7 Days

**IMPORTANT**

Complete and detach
this card and mail
it within 7 days
from purchase date.