775 F.2d 1084
 54 USLW 2276, 1985-2 Trade Cases 66,864
 FEDERAL TRADE COMMISSION, Plaintiff-Appellant,
v.
EVANS PRODUCTS COMPANY, a Delaware corporation, doing
business as Capp Homes and Ridge Homes, and Evans
Financial Corporation, a Washington
corporation, Defendants-Appellees.
 No. 85-3691.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 28, 1985.
Decided Nov. 5, 1985.
As Amended Dec. 12, 1985.
 
 John H. Carley, Ernest J. Isenstadt, Melvin H. Orlans, F.T.C., Washington, D.C., Randall H. Brook, Maxine R. Stansell, Kathryn C. Nielsen, Attys., F.T.C., Seattle, Wash., for plaintiff-appellant.
 Chris R. Youtz, George E. Greer, Sirianni & Youtz, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WALLACE, FARRIS, and HALL, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 The Federal Trade Commission appeals the denial of its motion for a preliminary injunction to preserve the remedies of rescission, restitution, and other equitable relief sought in a suit for a permanent injunction. The district court for the Western District of Washington, McGovern, J., denied the FTC's motion, finding that the FTC had failed to demonstrate a "likelihood of success on the merits" and that the balance of equities did not favor relief.
 
 
 2
 On January 11, 1985, the FTC sought a permanent prohibitory injunction and other equitable relief against Evans Products Company and its subsidiary Evans Financial Corporation, alleging "unfair or deceptive practices" in the sale and financing of consumer-completed homes in violation of section 5 of the FTC Act, 15 U.S.C. Sec. 45. The FTC alleged that Evans' advertisements "guaranteed" permanent mortgage loans to any consumer who first obtained loans from Evans to construct "finish-it-yourself" houses sold by Evans. These advertisements were allegedly followed by written and oral representations that a fixed interest rate, permanent mortgage loan was "assured" once the consumer qualified for a construction loan.
 
 
 3
 In fact, during the years 1979-1982, approximately 4,700 of the 8,700 consumers who obtained construction loans were unable to obtain the promised permanent loans. As a result, these consumers obtained Evans' or outside mortgage financing under worse terms than those originally indicated, or suffered foreclosure by Evans. The FTC sought an injunction prohibiting Evans from 1) foreclosing on its customers, 2) transferring consumer finance contracts to third parties unless a notice preserving the consumer's defenses was affixed, and 3) selling corporate assets in excess of $50 million unless 15% of the sales proceeds were escrowed for possible future consumer redress.
 
 
 4
 On January 17, 1985, the district court granted the FTC's motion for a temporary restraining order in part, thereby suspending foreclosure actions and directing Evans to give the FTC 30 days' advance notice of any asset sales over $10 million. The order expired on February 8, 1985; the FTC moved for a preliminary injunction; and on February 27, the district court denied the motion.
 
 
 5
 The district court found that 1) the FTC was not likely to succeed in showing that Evans' advertising was misleading, since the district court believed Evans' advertising claims to be "mere puffing"; 2) the only remaining allegations--omissions and oral misrepresentations made by Evans' salespeople--required extensive oral testimony to confirm so that, standing alone, the FTC's affidavits were insufficient to establish a likelihood of success; and 3) the balance of equities indicated that the relief requested would be "too detrimental" to both Evans and its customers.
 
 
 6
 The FTC timely filed its notice of appeal; three days later, Evans filed in Florida for bankruptcy under Chapter 11. The FTC then sought an injunction pending appeal, and although the district court denied the motion, on appeal we granted the motion, enjoining all foreclosures unless Evans first obtained the consent of the bankruptcy court in Florida. The bankruptcy court, which had initially abstained pending resolution of our proceedings, granted Evans' "Motion to Continue Business Operations" and authorized Evans to commence foreclosure and sales. Following an emergency motion for clarification of our earlier injunction, we indicated that sale or foreclosure pending appeal would only be allowed when a home was in immediate danger of severe damage and the marginal delay would significantly increase Evans' costs, when consumers expressly disclaimed any interest in retaining their homes, or when consumers voluntarily abandoned homes in a state of severe disrepair.
 
 
 7
 The district court had jurisdiction under 28 U.S.C. Sec. 1331(a), Sec. 1337, Sec. 1345, and 15 U.S.C. Sec. 45. We have jurisdiction over this appeal under 28 U.S.C. Sec. 1291.
 
 
 8
 I. Preliminary injunctive relief under Sec. 13(b).
 
 
 9
 The FTC first argues that the district court may grant preliminary relief under section 13(b) of the FTC Act, 15 U.S.C. Sec. 53(b). Although the relevant proviso of Sec. 13(b) explicitly only authorizes permanent relief--"in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction," 15 U.S.C. Sec. 53(b) (emphasis added)--we have held that "because the district court has the power to issue a permanent injunction to enjoin acts or practices that violate the law enforced by the Commission, it also has authority to grant whatever preliminary injunctions are justified by the usual equitable standards." FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1111 (9th Cir.1982). See also Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291-92, 80 S.Ct. 332, 334-36, 4 L.Ed.2d 323 (1960); Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946); FTC v. Southwest Sunsites, Inc., 665 F.2d 711, 718-19 (5th Cir.), cert. denied, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed. 846 (1982). Therefore, we must determine whether the FTC has brought a "proper case" that meets the "usual equitable standards" for preliminary relief.
 
 
 10
 A. The FTC's theory of a "proper case": a violation of any law enforced by the FTC.
 
 
 11
 The FTC argues that a "proper case" for which Sec. 13(b) injunctive relief may be sought includes 1) any case involving a law enforced by the FTC, or 2) any case involving a likelihood that a past violation of a law enforced by the FTC will recur. We accord "considerable weight" to the meaning given a statute by the agency charged with administering it. See, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984).
 
 
 12
 We accepted the FTC's first assertion in Singer: "Congress ... gave the district court authority to grant a permanent injunction against violations of any provisions of law enforced by the Commission...." 668 F.2d at 1113 (emphasis added). See 15 U.S.C. Sec. 53(b)(1) (FTC may seek a temporary restraining order or preliminary injunction whenever it has reason to believe that any person "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission...."); S.Rep. No. 151, 93rd Cong., 1st Sess. 30-31 (1973) (quoted in Singer, 668 F.2d at 1110-11); see also FTC v. Simeon Management Corp., 532 F.2d 708, 712 (9th Cir.1976); 119 Cong.Rec. 22979 (July 10, 1973) (Statement of Sen. Jackson). Such a comprehensive reach for Sec. 13(b) has been expressly, see FTC v. Virginia Homes Manufacturing Corp., 509 F.Supp. 51, 54 (D.Md.), aff'd, 661 F.2d 920 (4th Cir.1981); FTC v. H.N. Singer, Inc., 1982-83 Trade Cas. (CCH) p 65,011 at 70,618 (N.D.Cal.1982), and implicitly confirmed, see FTC v. Brown & Williamson Tobacco Corp., 580 F.Supp. 981 (D.D.C.1983); United States v. National Dynamics Corp., 525 F.Supp. 380 (S.D.N.Y.1981), by other courts which have granted permanent injunctions under Sec. 13(b).
 
 
 13
 In attempting to limit Sec. 13(b) to cases involving "routine fraud" or violations of previously established FTC rules, Evans misreads both the case law, see Singer, 668 F.2d at 1111, and the legislative history. See S.Rep. No. 151, 93rd Cong. 1st Sess. 31 (1973) (Sec. 13(b) authorizes a permanent injunction "when a court is reluctant to grant a temporary injunction because it cannot be assured of a [sic] early hearing on the merits," as well as in "the routine fraud case") (quoted in Singer, 668 F.2d at 1111).
 
 
 14
 B. Does a "proper case" include charges of past violations of the FTC Act?
 
 
 15
 Evans' more serious contention is that a Sec. 13(b) "proper case" does not encompass violations that completely ceased before the FTC brought suit and have not been shown to be likely to recur.[1]
 
 
 16
 Evans' view that Sec. 13(b) cannot be used to remedy past violations is supported by the statutory language. The FTC may only seek a temporary restraining order or a preliminary injunction when it believes a person "is violating, or is about to violate" any law enforced by the FTC; the statute does not mention past violations. 15 U.S.C. Sec. 53(b)(1). The sparse legislative history also indicates that Congress only contemplated ongoing or future violations which required the "quick handling" that an injunction could provide. See, e.g., S.Rep. No. 151, 93rd Cong., 1st Sess. 30 (1973), quoted in Singer, 668 F.2d at 1111 (Sec. 13(b) would be used "to bring an immediate halt to unfair or deceptive acts.... At the present time such practices might continue for several years until agency action is completed."); see also 119 Cong.Rec. 36597 (November 12, 1973) (Statement of Rep. Melcher); 119 Cong.Rec. 36609 (November 12, 1973) (Statement of Rep. Smith). The legislative history is silent about the use of Sec. 13(b) to preserve remedies for a past violation of the law.
 
 
 17
 As a general rule, "[p]ast wrongs are not enough for the grant of an injunction"; an injunction will issue only if the wrongs are ongoing or likely to recur. See, e.g., Enrico's, Inc. v. Rice, 730 F.2d 1250, 1253 (9th Cir.1984), citing City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); see also United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897-98, 97 L.Ed. 1303 (1953); TRW, Inc. v. FTC, 647 F.2d 942, 954 (9th Cir.1981) (FTC must demonstrate cognizable danger of recurrence in order to obtain a cease-and-desist order). We therefore consider whether Evans' alleged violations have completely ceased; if they have, we consider whether they are likely to recur.
 
 
 18
 The gravamen of the FTC's complaint is that Evans engaged in misrepresentations and false advertisements during 1979-1982. The FTC does not contend that these misrepresentations and advertisements are presently occurring. Instead, the FTC characterizes Evans' alleged violation as a continuing refusal to provide promised loans, and analogizes this case to Virginia Homes, 509 F.Supp. 51.
 
 
 19
 Virginia Homes held that a defendant's refusal to advise prior customers that their warranty rights had been recently expanded amounted to an ongoing violation of the Magnuson-Moss Warranty Act, 15 U.S.C. Secs. 2301 et seq. The court did not hold that the incomplete warranty which the customers had originally received constituted a continuing violation. The FTC's argument confuses a violation with the injury flowing from that violation; only the injuries flowing from Evans' alleged misrepresentations are continuing today. The FTC is attempting to obtain injunctive relief for violations which have completely ceased.
 
 
 20
 Even though Evans' alleged violations have completely ceased, we must review whether those violations are likely to recur. See Enrico's, Inc., 730 F.2d at 1253. Evans' alleged misrepresentations ceased in 1982 long before the FTC's complaint was filed on January 11, 1985. Moreover, Evans has filed for bankruptcy. The district court made no finding of likelihood of recurrence. None was requested by the FTC. Our review of the record does not indicate that the district court would do so. Cases that the FTC cites involved violations that, while past, had been found likely to recur. See, e.g., Singer, 668 F.2d at 1113; see also Rubbermaid, Inc. v. FTC, 575 F.2d 1169, 1172-73 (6th Cir.1978) (cease and desist order not involving Sec. 13(b) ). Preliminary injunctive relief under Sec. 13(b) is therefore precluded.
 
 
 21
 II. The district court's inherent equitable powers.
 
 
 22
 The FTC alternatively argues that the district court should have exercised its discretionary equitable powers to grant ancillary relief appurtenant to the ultimate remedies of recission and restitution. In this case the FTC seeks an order enjoining Evans from (1) pursuing or initiating foreclosures, (2) transferring consumer finance agreements to third parties without attaching a notice preserving consumer claims, and (3) selling corporate assets in excess of fifty million dollars unless fifteen percent of the proceeds are escrowed to protect consumers which bring actions against Evans.
 
 
 23
 Courts have inherent equitable powers to grant ancillary relief, other than a preliminary injunction restraining future violations of the law, when there is no likelihood of recurrence. SEC v. Wencke, 622 F.2d 1363, 1368-69 (9th Cir.1980); SEC v. Penn Central, Co., 425 F.Supp. 593, 598-99 (E.D.Pa.1976). See also SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir.1972); SEC v. Texas Gulf Sulphur Co., 446 F.2d 1301, 1306-08 (2d Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). The power to grant a preliminary injunction, which freezes assets when circumstances require, is among these inherent equitable powers. FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431 (11th Cir.1984) (per curiam); USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 98-100 (6th Cir.1982); FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1112 (9th Cir.1982); International Controls Corp. v. Vesco, 490 F.2d 1334, 1347-48, (2d Cir.), cert. denied, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).
 
 
 24
 In determining whether to grant a preliminary injunction which freezes assets against a potential recovery, we apply the standard test used in this circuit to evaluate claims for preliminary injunctive relief. Under the first part of this test, the movant must show 1) irreparable injury, 2) probable success on the merits, 3) a balance of hardships that tips in the movant's favor, and 4) that a preliminary injunction is in the public interest. Martin v. International Olympic Committee, 740 F.2d 670, 674-75 (Fed.Cir.1974). Alternatively, a court may issue an injunction if the moving party demonstrates either a combination of probable success on the merits and irreparable injury or that serious questions are raised and the balance of hardships tips in his favor. Id. at 675.
 
 
 25
 Because we find that the balance of hardships does not tip in the FTC's favor and that there is not a strong showing of irreparable injury, the FTC cannot pass the first test and fails in a requisite element of each prong of the alternative test.
 
 
 26
 The potential for irreparable harm in this case is limited. We find no evidence that Evans is, or is likely to, secret away assets before relief can be effectuated. Moreover, Evans' status as a debtor in Chapter 11 limits its ability to transfer assets to the disadvantage of potential judgment creditors.
 
 
 27
 The balance of hardships favors Evans. If the FTC's ancillary relief were granted, Evans would be required to maintain and pay taxes on several hundred homes during the pendency of the FTC's permanent injunction action, and the marketability of Evans' consumer financing notes would be impaired at a time when interest rates place these mortgages at what Evans avers may be their maximum worth. On the other hand, in the absence of ancillary relief, Evans' customers may still obtain relief through state actions tailored to the specific misrepresentations alleged in their individual cases.
 
 
 28
 In light of the serious harm which ancillary relief could cause to Evans' precarious financial position, the availability of private actions, and the lack of evidence that Evans' assets will be insufficient to satisfy potential judgments absent ancillary relief, we hold that the district court did not abuse its discretion in declining to exercise its inherent equitable powers.
 
 
 29
 III. Conclusion.
 
 
 30
 Although the FTC may seek Sec. 13(b) preliminary injunctive relief for a violation of "any law enforced by the FTC," 15 U.S.C. Sec. 53(b), the statutory language, legislative history, and cases indicate that Sec. 13(b) may not be used to remedy a past violation that is not likely to recur. Because Evans' alleged practices have ceased and are not likely to recur, the FTC may not obtain preliminary injunctive relief under Sec. 13(b).
 
 
 31
 Although the district court has the power to grant ancillary relief other than an injunction restraining future violations of the law, the district court did not abuse its discretion in refusing to exercise its inherent equitable powers to grant relief. The denial of a preliminary injunction is
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Evans also argues that our previous refusal to allow the FTC to obtain restitution in a cease-and-desist proceeding under Sec. 5(b), see Heater v. FTC, 503 F.2d 321, 323 (9th Cir.1974), should bar the FTC from obtaining rescission and restitution in both its permanent and ancillary preliminary injunction actions. Heater, however, delineated the "scope of the powers given the Commission " to order remedies under its statute-born cease-and-desist authority, see 503 F.2d at 327 (emphasis added), rather than the power of the district court to remedy violations brought to its attention by the FTC acting as a litigant. See Heater, 503 F.2d at 326 (noting that the FTC Act "does not expressly confer any general power, of the kind possessed by a court of equity, to compel restitution, or otherwise to so mold the decree as to do substantial justice.") (quoting Henderson, The Federal Trade Commission 71 (1924) ) (emphasis added). Other courts have recognized that Heater 's ban on restitution is limited to the FTC's own private exercise of its cease-and-desist power, and "did not involve the power and authority of the district court." Baum v. Great Western Cities, Inc., 703 F.2d 1197, 1208 (10th Cir.1983); see also FTC v. Virginia Homes Manufacturing Corp., 509 F.Supp. at 55 n. 2