**Earl R. BAXTER, Willeyne Baxter, Lynn O. Muse, Richard L. King and W. K. Cash, Appellants,**

v.

**UNITED FOREST PRODUCTS CO., Inc., Appellee.**

No. 19287.

United States Court of Appeals
Eighth Circuit.

Feb. 3, 1969.

As Amended and Rehearing Denied
Feb. 25, 1969.

tion boxes. The plaintiff, United Forest Products Company, Inc., supplied precut component parts of wooden boxes to the Baxter Company. Early in 1967 the parties commenced negotiations for the purchase of Baxter Lumber Company by United Forest. On April 24 of that year a final agreement was entered into whereby United Forest agreed to purchase the company for $2,180,000. Payment was to be made in four installments, ranging from $500,000 to $600,000 each. The contract also contained a forfeiture provision which provided that upon default of payment the plaintiff would lose all previous payments and return the stock and management of the company to the defendants. Under the contract plaintiff was required to put $500,000 working capital into the business the first year. This investment was also to be forfeited upon default.

Donald A. Wine, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, for appellants; A. Arthur Davis and William J. Koehn, on the brief.

Eugene Davis, of Duncan, Jones, Riley & Davis, Des Moines, Iowa, for appellee.

Before GIBSON and LAY, Circuit Judges, and HARPER, Chief District Judge.

## PER CURIAM.

This appeal arises from a district court's auxiliary order sequestering monies of the defendants in a federal diversity case without compliance with state law governing attachment. We find no authority for the action of the district court and vacate its order.

The facts show that in 1962 the defendants formed the Baxter Lumber Company and became its major stockholders. The company, which had plants in Iowa, Texas and Tennessee, engaged primarily in the assembling of ammuni-

Shortly before the first installment was due in August of 1967, United Forest brought suit in federal district court alleging fraud and misrepresentation by defendants in the sale of the lumber company. United Forest, stating that the forfeiture provisions made rescission impractical, affirmed the contract, but sought actual damages of $1,180,000 and exemplary damages of $1,000,000. Plaintiff then requested leave of court to deposit the first installment into the registry of the court alleging that some of the defendants were nonresidents, and that unless the monies were sequestered none of the defendants would ever be able to respond to plaintiff for damages.

After an evidentiary hearing, the court determined that there existed evidence demonstrating misrepresentations of a substantial nature and, relying upon Fed.R.Civ.P. 67,[1] ordered all monies due

1. Fed.R.Civ.P. 67 provides:
   "In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of *such sum* or *thing*. Money paid into court under this rule shall be deposited and withdrawn in accordance with the provisions of Title 28, U.S.C. §§ 2041, and 2042; the Act of June 26, 1934, c. 756, § 23, as amended, (48 Stat. 1236, 58 Stat. 845), U.S.C. Title 31, § 725v; or any like statute. As amended Dec. 29, 1948, effective Oct. 20, 1949." (Emphasis ours.)

and payable under the contract to be deposited into the registry of the court. At the same time the court ordered plaintiff relieved from an attachment bond, but nevertheless required it to deposit an additional sum of $44,800 "which additional sum shall be held as security for such right of action, if any, as the individual Defendants might have under Iowa law for *wrongful attachment* \* \* \*." (Emphasis ours.)

In November of 1967, defendants moved for disbursement of the funds. Plaintiff then requested leave of court to deposit the second installment, due December 31, 1968. After another hearing, the court held that the portion of the installment payments owed to three of the defendants would not be disbursed until decision of the case on the merits. The court also noted that since the plaintiff had made no direct allegations of fraud against the three other shareholders, they could not be charged with exemplary damages. He therefore ordered their shares of the first two installments to be disbursed, stating orally, however, that their shares of the last two installments would be held. At the time of appeal the total amount of money paid into court was $691,200.[2]

Initially we must decide whether the district court's order is appropriate for appellate review. The district court properly refused to certify "that there is no just reason for delay" under Fed.R.Civ.P. 54(b). This rule applies only to multiple claims, wherein there has been an adjudication of less than all claims and a party desires "finality" for purposes of appeal. Procedure for interlocutory appeal under 28 U.S.C.

§ 1292(b), was not followed and is not applicable. Nor does the off-shoot, "irreparable injury" rule of the *Forgay-Conrad*[3] case render the matter appealable. This rule relates only to the appealability of a partial adjudication of a single claim and is not applicable here.

If the court's order is reviewable at all, our jurisdiction can only be premised upon the so-called "collateral order" doctrine which disposes of a right auxiliary to the merits of a claim filed. The United States Supreme Court in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546–547, 69 S.Ct. 1229, 93 L.Ed. 1528 (1949) stated that the appealability of a collateral order depends upon (1) whether the rights decided are collateral to the merits of the claim (cf. Western Steel Erection Co. v. C. H. Leavell & Co., 384 F.2d 764 (8 Cir. 1967)), (2) whether the order is "too important to be denied review," (3) whether the order is "too independent of the cause itself" to defer appellate review until the whole case is decided, and (4) whether the order involves an adjudication of an important question of law or is only an exercise of the court's discretion. The above factors are to be weighed with Mr. Justice Frankfurter's statement in DiBella v. United States, 369 U.S. 121, 126, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), that under proper application the "collateral order" doctrine is applied "when the practical effect of the order will be irreparable by any subsequent appeal."

In focus is the specific question whether the court was correct in refusing to require plaintiff to post security under and otherwise adhere to the Iowa law of attachment pursuant to Fed.R.Civ.P. 64.[4] If review of the court's authority

---

2. This court was informed during the appellate argument that the total purchase price less the three shareholders' portions of the first two installments has now been paid into the court. This comes to a total of $1,791,200. No further security for a possible "wrongful attachment" other than the initial $44,800 has been required of the plaintiff. Additionally, the court ordered that all monies sequestered were to be deposited at the best interest rate obtainable.

3. Forgay v. Conrad, 47 U.S. 201, 6 How. 201, 12 L.Ed. 404 (1848).

4. Fed.R.Civ.P. 64 provides:
   "At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be

to sequester funds were required to await appeal of the merits on protracted litigation,[5] compliance with the Iowa law of attachment would come too late to assure protection of the defendants' property rights involved. In order to attach monies before judgment the Iowa Code requires (1) that in a non-contract action the amount attached must be approved by a court of competent jurisdiction,[6] (2) that plaintiff demonstrate statutory grounds for such attachment,[7] and (3) that a bond be required in an amount double the value of the property

to be attached.[8] The policy reasons behind these statutory provisions are self-evident. Under Iowa law the amount of the attachment bond was not left to the discretion of the trial judge. The legislature required a bond double the value of the property attached not only as protection to the property owner but undoubtedly as an added deterrent to those who seek to attach property upon a mere statement of a contingent claim. See discussion in n. 10, infra. Of particular significance is the prerequisite of judicial approval as to the amount to be

entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action."

5. This case was filed on August 7, 1967, and has yet to come to trial.

6. Iowa Code Ann. § 639.8 (1950). Under the Iowa law of attachment, if the suit is founded on a contract, the court will permit a levy upon property only fifty per cent greater in value than the amount alleged to be due. Iowa Code Ann. §§ 639.6 & 639.7 (1950).

7. Iowa Code Ann. § 639.3 (1950) provides:
   "The petition or amendment to petition which asks an attachment, must in all cases be sworn to. It must state one or more of the following grounds:
   "1. That the defendant is a foreign corporation or acting as such.
   "2. That he is a nonresident of the state.
   "3. That he is about to remove his property out of the state without leaving sufficient remaining for the payment of his debts.
   "4. That he has disposed of his property, in whole or in part, with intent to defraud his creditors.

   "5. That the defendant is about to dispose of his property with intent to defraud his creditors.
   "6. That he has absconded, so that the ordinary process cannot be served upon him.
   "7. That he is about to remove permanently out of the county, and has property therein not exempt from execution, and that he refuses to pay or secure the plaintiff.
   "8. That he is about to remove permanently out of the state, and refuses to pay or secure the debt due the plaintiff.
   "9. That he is about to remove his property or a part thereof out of the county with intent to defraud his creditors.
   "10. That he is about to convert his property or a part thereof into money for the purpose of placing it beyond the reach of his creditors.
   "11. That he has property or rights in action which he conceals.
   "12. That the debt is due for property obtained under false pretenses."

8. Iowa Code Ann. § 639.11 (1950) provides:
   "In all cases before it can be issued, the plaintiff must file with the clerk a bond for the use of the defendant, with sureties to be approved by such clerk, in a penalty at least double the value of the property sought to be attached, and in no case, except in a class B case in municipal court, less than two hundred fifty dollars in a court of record, or less than fifty dollars if in a justice court or a class B case in municipal court, conditioned that the plaintiff will pay all damages which the defendant may sustain by reason of the wrongful suing out of the attachment."

attached in a tort action, as involved here. Under Iowa law a party cannot arbitrarily govern the amount attached by inflating the prayer for damages in the complaint. The value of the property attached must have some realistic relationship to the damages theoretically sustained.

The issue here is not one related to the proper exercise of the court's discretion as to the amount of security to be posted. The question which makes this matter reviewable is whether the law permits a trial court to circumvent the Iowa law of attachment altogether. A similar issue of review was involved in the *Cohen* case where the district court had refused to apply New Jersey law requiring security for costs in a stockholders derivative action. Cf., e. g., Swift & Co. Packers v. Componia Columbiana Del Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (reviewed order vacating attachment); Phelps v. Burnham, 327 F.2d 812 (2 Cir. 1964) (reviewed order requiring the posting of security); McDonnell v. Birrell, 321 F.2d 946 (2 Cir. 1963) (reviewed order requiring party to make payments, to determine whether order conformed with requirements of state law).

■ We find the district court's order is reviewable under the *Cohen* rule. We now consider the merits.

■ Plaintiff seeks to avoid Rule 64 by reasoning that sequestering the funds did not involve "attachment" because the funds were never owned by the defendants. This argument is inconsistent with its asserted action. If the money does not belong to defendants, plaintiff has defaulted in its payment and is subject to the forfeiture terms of the contract. However, plaintiff has specifically elected to affirm the contract and has deposited the installment payments into court in order to avoid the forfeiture provision of the contract. Plaintiff cannot pursue inconsistent forms of relief to the prejudice of the defendants. See Myzel v. Fields, 386 F.2d 718, 740 n. 15 (8 Cir. 1967). Upon plaintiff's election to af-firm the contract, the money paid under the contract legally belongs to the defendants. The fact that the money has been paid into the registry of the court does not deprive the defendants of ownership of the funds, since the court merely holds the money as trustee for the rightful owner. See In re Moneys Deposited, etc., 243 F.2d 443, 445 (3 Cir. 1957). Plaintiff has no recognizable interest remaining in those funds. Mere allegations of tortious injury cannot give plaintiff any specific interest in defendants' property. Plaintiff at this juncture is not entitled to any kind of lien, equitable or otherwise, on said monies which could place its interest above that of defendants' general creditors. At this point, plaintiff does not even enjoy the status of a general creditor. The district court itself tacitly recognized that the fund belonged to the defendants by disbursing a small portion of it to some of the defendants and by requiring plaintiff to post a $44,800 bond in case the defendants wished to sue for wrongful attachment.

■ Fed.R.Civ.P. 64 governs seizure of a person's property in a federal diversity action. The Advisory Committee comment on Rule 64 relates to the necessary application of state law in discussing the origin of the rule:

"This rule adopts the existing federal law, except that it specifies the applicable state law to be that of the time when the remedy is sought. Under U.S.C.A., Title 28, former § 726 (Attachments as provided by state laws) the plaintiff was entitled to remedies by attachment or other process which were on June 1, 1872, provided by the applicable state law, and the district courts might, from time to time, by general rules, adopt such state laws as might be in force. This statute is superseded as are district court rules which are rendered unnecessary by the rule."

The "existing law" refers to the Conformity Act of 1872 which provided that in all cases at common-law, the procedure as to "attachment or other process should

conform to the state practice." See Big Vein Coal Co. v. Read, 229 U.S. 31, 36, 33 S.Ct. 694, 57 L.Ed. 1053 (1913). Thus, with respect to such provisional remedies the federal courts are required to apply state law. See, e. g., Bernstein v. Van Heyghen Freres Societe Anonyme, 163 F.2d 246 (2 Cir. 1947); General Elec. Credit Corp. v. Waukesha Bldg. Corp., 259 F.Supp. 958 (W.D.Ark.1966); Hisel v. Chrysler Corp., 90 F.Supp. 655 (W.D. Mo.1950); 7 Moore, Fed.Practice ¶ 64.-01.–09 at 1501–1507 (2 ed. 1966). Rule 64, however, does make state law subject to any existing statute of the United States which might be applicable.

■ The question then is whether there exists any applicable federal statute which authorized the district court's action. The trial court relied upon the "literal" language of Rule 67. The history of Rule 67, however, demonstrates that it is not intended as an "equitable" alternative to the applicability of state law under Rule 64. Rule 67 was intended to apply only to a fund that is in dispute. See discussion in United States v. Balfour, Gutherie & Co., 192 F.Supp. 60 (S.D.N.Y.1961). When a disputed *res* or "sum of money" is deposited into the registry, the court holds the money in trust; it is "held for the benefit of whomsoever in the end it should be found to belong," Branch v. United States, 100 U.S. 673, 674, 25 L.Ed. 759 (1879). However, here the seized money is not in contest. Plaintiff's election to sue in tort and keep the bargain confirms this. The plaintiff seeks relief from material misrepresentation which has caused it damage since its bargain retained allegedly is less valuable than was represented. The damage, if any, *arises out of* the alleged excess consideration paid on the contract; the damage is not *the* consideration itself, since the bargain has been affirmed and rescission has not been elected. Plaintiff simply wants its bargain and its money too. At the same time it seeks to deprive defendants of their right to claim forfeiture or to sue for a breach of contract. Cf. General Pencil Co. v. George N. Kahn Co., 246 F.Supp. 60 (S.D.N.Y.1965); Dinkins v. General Aniline & Film Corp., 214 F. Supp. 281 (S.D.N.Y.1963). Rule 67 was not intended for such a one-sided before-judgment consequence.[9]

The sole question remaining is whether the court has an "inherent power" to allow the plaintiff to deposit the monies into court. Argument is made from cases relying upon the All Writs statute, 28 U.S.C.A. § 1651(a), which reads:

> "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

However, these cases and statute are not helpful here. This statute was not intended to be used to subvert the specific requirements governing attachment under state law. Section 1651 relates only to writs "agreeable to * * * principles of law." This brings us directly back to Rule 64. In De Beers Consol. Mines v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), which involved an analogous situation, the government sought a preliminary injunction under § 262 of the Judicial Code which preceded § 1651(a). The injunction sought restraint from withdrawal by defendant foreign corporations of any properties located in the United States of America and from "selling, transferring or disposing" of any of its properties until the determination of the merits of the suit. The complaint sought equitable relief under the Sherman Act and the government claimed the injunction necessary to enforce the court's ultimate decree. The district court entered the injunction. The Supreme Court vacated the same. The government admitted Rule 64 inapplicable because under New York law attachment could only issue in an action at law. However, the

9. The plaintiff relies upon Fouch v. Rollins, 16 Alaska 545, 146 F.Supp. 87 (D.C. 1956). For the reasons stated in the opinion we do not accept the *Fouch* case in this Circuit.

concluding remarks of Mr. Justice Roberts demonstrate, we feel, the error of the district court in the instant case:

"To sustain the challenged order would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. *And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also,* *apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.*" 325 U.S. at 222, 65 S.Ct. 1130, at 1135. (Emphasis ours.)

The effect of plaintiff's action here is to obtain such a "so-called injunction" for an action at law. The situation is no different than if defendants were paid the monies directly and then were enjoined from "disposing" of them until the determination of the merits. Provisional remedies of attachment before judgment were not recognized at common law. They are statutory remedies in derogation of the common law and strict compliance with the statutory requirements is therefore necessary.[10]

---

10. The Iowa court reviewed its earlier statements in Olds v. Olds, 219 Iowa 1395, 260 N.W. 1, 261 N.W. 488, 490–491 (1935):

"'It is a well-established rule that attachment proceedings are in derogation of the common law.

"'In Eads v. Pitkin, 3 G. Greene, 77, at page 83, this court said: "Having resorted to this mode of procedure it was incumbent on him to comply with the provisions of the attachment law of the state by filing the affidavit therein prescribed, and giving the bond required by that law, before the issuing of the writ. By simply providing that the complainant might proceed in his action by attachment, without prescribing any special mode of procedure different from that which is set forth in the general attachment law of the state, it must be presumed that it was the intention of the legislature that the requirements of that law should be observed, and strictly pursued. The proceeding by attachment being extraordinary in its nature, and designed for application to secure the ends of justice in cases specified, and when the ordinary process of law would be unavailing, it is not presumable that the legislature would have authorized a plaintiff to resort to it without protecting the interests of the defendant by the usual and necessary guards. To adopt such a presumption would be in contravention of the most manifest principles of reason and right. It would expose a party defendant to a ruinous sacrifice of his property and effects, at the mere will of an attaching complainant. Such a presumption of legislative design would be violent indeed."

"'And in Tiffany v. Glover, 3 G. Greene, 387, at page 390, this court, referring to an attachment proceeding, said:

"'"The proceeding being in derogation of the common law, and of a violent character, it should affirmatively appear by the officer's return, that the provisions of the statute had been strictly observed, as the jurisdiction of the court over the property depends entirely upon a legal levy. * * *

"'"In proceedings in attachment, the jurisdiction of the court is obtained by special authority, derived from the legislature, and hence the doctrine of presumption, as applicable to courts in the exercise of common law powers, cannot apply."

"'The late Justice DeGraff, speaking for this court in Edwards v. Tracy, 203 Iowa, 1083, at page 1084, 212 N.W. 317, 318, said: "Proceedings in attachment are ancillary or auxiliary to the main action and are statutory, being unknown to the common law. Curry v. Allen, 55 Iowa, 318, 7 N.W. 635; Eads v. Pitkin, 3 G. Greene, 77; Delaplain & Co. v. Armstrong & Ulrich, 21 W.Va. 211; Penoyar v. Kelsey, 150 N.Y. 77, 44 N.E. 788, 34 L.R.A. 248. An attachment is not the leading process. Its only office

However, even more cogent is the fact that before a person's property can be sequestered, basic principles of due process require adherence to recognized legal standards.

 One reason plaintiff urged sequestering defendants' funds during the pendency of the claim was it's concern for defendants' bankruptcy. Plaintiff's action in retaining the business sold and depriving defendants of the consideration during pendency of the litigation would almost guarantee this ominous result. The law does not recognize such leverage in the hands of litigants.

Judgment reversed with directions to vacate the court's order in conformity with this opinion.

is to hold the property attached under it for the satisfaction of plaintiff's demand. In a sense, it is an execution by anticipation. It is in derogation of the common law, but, under our statute, the proceedings are to be liberally construed. Section 12143, Code 1924. A court, however, cannot proceed by attachment unless the power rests upon express statutory sanction."

" 'Attachment proceedings are wholly statutory and we must look to the statute to find when an attachment may issue. A court of equity has no general jurisdiction to order an attachment without bond. * * * ' "