**FEDERAL TRADE COMMISSION,**
**Plaintiff-Appellee,**

v.

**H. N. SINGER, INC., et al., Defendants,**

**and**

**Michael Quinlan and James Earl Weihoff, Defendants-Appellants.**

**Nos. 80–4508, 81–4119.**

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 14, 1981.
Decided Feb. 26, 1982.

Jeremiah Casselman, Los Angeles, Cal., for defendants-appellants.

Laurence O. Masson, San Francisco, Cal., Edward F. Glynn, Jr., Atty., F. T. C., Washington, D. C., for plaintiff-appellee.

Before DUNIWAY and FERGUSON, Circuit Judges, and HOFFMAN,* District Judge.

DUNIWAY, Circuit Judge:

Defendants appeal from a preliminary injunction and from an order modifying it. We affirm.

### I. *The Nature of the Case.*

In its complaint, filed in the district court, the Federal Trade Commission alleged violations of its trade regulation rule "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," 16 C.F.R. Part 436 (The Franchise Rule), and sought redress for third parties under Section 19 of the Federal Trade Commission Act, 15 U.S.C. § 57b(a)(1) and (b). It also alleged false promises and false and misleading representations contrary to Section 5(a) of the Act, 15 U.S.C. § 45(a), and sought a permanent injunction under Section 13(b) of the Act, 15 U.S.C. § 53(b) and refunds for third parties as a form of relief ancillary to that equitable relief.

The Commission asked for a preliminary injunction against further violations of the Franchise Rule, freezing the defendants' assets (except for "ordinary business and living expenses") pending a trial on the merits, and requiring an accounting of assets acquired by the defendants as a result of the defendants' activities. The preliminary injunction was sought in accordance with the procedures of F.R.Civ.P. 65(a) and on the authority of both § 13(b) and § 19. The district judge granted a preliminary injunction in terms somewhat different from those requested. Two individual defendants, Quinlan and Weihoff, appeal. That is our number 80–4508. They also asked the district court to modify its order on the ground that the requirement that they provide an accounting was a violation of their privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. The district

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District

court agreed and amended its order so that the defendants were required to file only "all current accountants' reports, bank statements, documents indicating title to real or personal property, and other indicia of ownership or interest in property of any of the defendants...." The same defendants appeal from the order modifying the injunction. That is our number 81–4119.

The alleged violations of the law by the defendants arose from the sale of franchises for "Hot Box Products." Franchisees were to distribute frozen pizzas and ovens to retail outlets. They paid substantial amounts for the franchises. The details of the fraud need not concern us. The appellants do not challenge the sufficiency of the evidence to support preliminary injunctive relief against them.

### II. *The Form of the Preliminary Injunction.*

The appellants argue that the injunction should be vacated because the district judge failed to make findings of facts as is required by F.R.Civ.P. 52. But the injunction made it clear that the court had considered the pleadings, memoranda and affidavits and had concluded that the Commission was likely to prevail upon the merits and that in the absence of preliminary relief immediate and irreparable harm would occur. In this case explicit findings of fact were not necessary for meaningful appellate review. *See Magna Weld Sales Co. v. Magna Alloys & Research Pty.,* 9 Cir., 1976, 545 F.2d 668.

### III. *The Power to Issue a Preliminary Injunction.*

Rule 65 concerns the procedure for issuing a preliminary injunction. The substantive basis and the jurisdictional authority for use of this procedure must be sought elsewhere. 7—Pt. 2 Moore's Federal Practice ¶ 65.03[1]. There are two bases for jurisdiction to issue the preliminary injunction. One is Section 19 of the Act, 15 U.S.C. § 57b(a)(1) and (b):

of Virginia, sitting by designation.

(a)(1) If any person, . . . violates any rule under this chapter respecting unfair or deceptive acts or practices . . . then the Commission may commence a civil action against such person, . . . for relief under subsection (b) of this section in a United States district court. . . .

.    .    .    .    .

Nature of relief available

(b) The court in an action under subsection (a) of this section shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be. Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

It is clear that under this section a district court has jurisdiction to issue a preliminary injunction.

The second legal basis is Section 13(b) of the Act, 15 U.S.C. § 53(b):

Temporary restraining orders; preliminary injunctions

(b) Whenever the Commission has reason to believe—

(1) that any person, partnership, or corporation is violating, or is about to violate any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any such suit shall be brought in the district in which such person, partnership, or corporation resides or transacts business.

The Commission argues that the second proviso gives it the power to seek an injunction in the district court in proper cases without also initiating administrative proceedings. The appellants disagree. They read the clause as granting the Commission the power to seek permanent injunctions only under the conditions laid down earlier in the section for the issuance of preliminary injunctions. We agree with the Commission. The proviso in question does not on its face condition the issuance of a permanent injunction upon the initiation of administrative proceedings.

What little legislative history there is supports our conclusion. Section 13(b) was enacted as part of the Trans-Alaska Pipeline Act, P.L. 93–153, but was originally a part of the Senate bill for the Federal Trade Improvement Act of 1973, P.L. 93–637. In the Senate Report on that bill the intent of the final clause of § 13(b) was explained:

This section would permit the Commission to obtain either a preliminary or permanent injunction through court procedures initiated by its own attorneys against any act or practice which is unfair or deceptive to a consumer, and thus

prohibited by section 5 of the Federal Trade Commission Act. The purpose of section 210 is to permit the Commission to bring an immediate halt to unfair or deceptive acts or practices when to do so would be in the public interest. At the present time such practices might continue for several years until agency action is completed. Victimization of American consumers should not be so shielded.

Section 210 authorizes the granting of a temporary restraining order or a preliminary injunction without bond pending the issuance of a complaint by the Commission under section 5, and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final within the meaning of section 5. The test the Commission would have to meet in order to secure this injunctive relief is similar to the test it must already meet when attempting to secure an injunction against false advertising of food, drugs, devices, or cosmetics. (See 15 USC 53(a).)

Provision is also made in section 210 for the Commission to seek and, after a hearing, for a court to grant a permanent injunction. This will allow the Commission to seek a permanent injunction when a court is reluctant to grant a temporary injunction because it cannot be assured of a [sic] early hearing on the merits. Since a permanent injunction could only be granted after such a hearing, this will assure the court of the ability to set a definite hearing date. Furthermore, the Commission will have the ability, in the routine fraud case, to merely seek a permanent injunction in those situations in which it does not desire to further expand upon the prohibitions of the Federal Trade Commission Act through the issuance of a cease-and-desist order. Commission resources will be better utilized, and cases can be disposed of more efficiently.

S.Rep. 93–151, 30–31. This report sets out a clear and coherent policy underlying the new section and supports the natural reading of the statute.

It is true that the power given to the Commission in the second proviso has rarely been used. We have found only one case where the Commission has sought an injunction in a district court under this section. It was granted. *FTC v. Virginia Homes Manufacturing Co.*, D.Md., 1981, 509 F.Supp. 51. That court described as obfuscatory the argument that the Commission lacked the power because it had never previously attempted to use it. *Id.* at 53 n.1. We agree. We hold that § 13(b) gives the Commission the authority to seek, and gives the district court the authority to grant, permanent injunctions in proper cases even though the Commission does not contemplate any administrative proceedings. We hold further that a routine fraud case is a proper case. We further hold that this present case is a routine fraud case and a proper case for the use of this authority.

It is clear that, because the district court has the power to issue a permanent injunction to enjoin acts or practices that violate the law enforced by the Commission, it also has authority to grant whatever preliminary injunctions are justified by the usual equitable standards and are sought in accordance with Rule 65(a). *See Porter v. Warner Holding Co.*, 1946, 328 U.S. 395, 397–398, 66 S.Ct. 1086, 1088–1089, 90 L.Ed. 1332.

### IV. *The Power to Freeze Assets.*

The appellants do not object to that part of the preliminary injunction that prevents them from further violating the Franchise Rule. They do object to the orders that freeze their assets. The order directed to all defendants reads:

[They are restrained and enjoined]

2. From directly or indirectly, transferring, liquidating, encumbering, pledging, assigning, or otherwise disposing of any property of Singer, or of any of their personal assets or property (except for ordinary living expenses) unless allowed by further order of this Court;

There is also an order directed to appellant Weihoff to prevent him from disposing of

or encumbering a particular parcel of real property, and a similar order directed to appellant Quinlan. Finally there is an order directed to all banks, savings and loan institutions and brokerage houses preventing them from disposing of the defendants' assets and from allowing any withdrawals from their accounts. It does not contain an exception for "ordinary living expenses."

While the details of these orders might be open to challenge and the appellants could have sought clarification or alteration of them, they did not do so. Instead, they challenge the authority of the district court to issue any such order.

The appellants argue that the asset freeze is in effect a pre-judgment attachment of their assets for the purpose of securing post-judgment recovery, but that it does not meet the requirement of F.R. Civ.P. 64. That rule requires that attachment be in accordance with state law. The argument fails. Rescission is an old equitable remedy and the district court has power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of that equitable remedy. While it is true that the asset freeze has an effect comparable to that of an attachment, it is not an attachment. The fact that the conditions for attachment, normally a remedy in actions at law, might not be met does not imply that another and equitable provisional remedy is not available. *See Hamilton v. MacDonald*, 9 Cir., 1974, 503 F.2d 1138, 1149 n.17.

Because the authority to issue a preliminary injunction rests upon the authority to give final relief, the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy. The Commission says that the preliminary injunction is necessary to preserve the possibility of rescission of contracts and restitution of money obtained by fraud. Rescission is a possible remedy for violation of the Franchise Rule under § 19. Hence, there is a basis for the order freezing assets.

The Commission also relies upon § 13(b). It argues that, because that section gives the court authority to grant a permanent injunction, it also by implication gives the court authority to afford all necessary ancillary relief, including rescission of contracts and restitution. The power to enjoin is part of what used to be the jurisdiction of equity.

Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co. v. System Federation*, 300 U.S. 515, 552 [57 S.Ct. 592, 601, 81 L.Ed. 789]. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 [64 S.Ct. 587, 592, 88 L.Ed. 754].

.    .    .    .    .

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." *Brown v. Swann*, 10 Pet. 497, 503 [9 L.Ed. 508]. See also *Hecht Co. v. Bowles, supra*, 330 [64 S.Ct. 592].

*Porter v. Warner Holding Co.*, 1946, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332. *See also Mitchell v. Robert De Mario Jewelry, Inc.*, 1960, 361 U.S. 288, 291–292, 80 S.Ct. 332, 334–335, 4 L.Ed.2d 323. As we said in *Los Angeles Trust Deed and Mortgage Exchange v. SEC*, 9 Cir., 1960, 285 F.2d 162, 182, "Congress must be taken to have acted cognizant of the historic power

of equity to provide complete relief in the light of statutory purposes." *See also SEC v. Wencke*, 9 Cir., 1980, 622 F.2d 1363, 1369.

■ Appellants argue that Congress in § 19 explicitly granted the district court power to award rescission and other forms of redress only when a Commission rule had been violated, and thus implicitly restricted the remedy for other violations of the Act to agency processes and to the injunctive relief provided in § 13(b). However, § 19(e) provides: "Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law. Nothing in this section shall be construed to affect any authority of the Commission under any other provision of law." Thus, there is no necessary or inescapable inference, or, indeed, any inference, that Congress intended to restrict the broad equitable jurisdiction apparently granted to the district court by § 13(b). We hold that Congress, when it gave the district court authority to grant a permanent injunction against violations of any provisions of law enforced by the Commission, also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference. In particular, Congress thereby gave the district court power to order rescission of contracts. Hence § 13(b) provides a basis for an order freezing assets.

In this court, the appellants do not argue that the facts do not support the freeze order. They do not protest the particular details of the order. They stand upon their argument that the court lacked the power to issue it. That position, we reject. There is little authority on the question. *United States v. Coca-Cola Bottling Co.*, 9 Cir., 1978, 575 F.2d 222, involved a somewhat comparable order. But in that case the power to issue it was not directly attacked; our decision turned on whether, in that case, which involved violation of § 7 of the Clayton Act, 15 U.S.C. § 18, rescission was an available remedy.

In *SEC v. Manor Nursing Centers, Inc.*, 2 Cir., 1972, 458 F.2d 1082, 1105–1106, a freeze order was upheld. While that case arose under § 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), and § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, it is closely analogous to this one. There, as here, an objective of the Commission was to obtain restitution of moneys fraudulently obtained.

We agree with the statement in the opinion of that case:

> that the decision to order a temporary freeze on defendants' assets as ancillary relief in an SEC enforcement action requires particularly careful consideration by the district court. One of the chief reasons for requiring defendants to refund illegally obtained proceeds of a public offering is to compensate defrauded investors. To effect this purpose there may be circumstances where a district court should temporarily freeze defendants' assets to insure that they will be available to compensate public investors. Freezing assets under certain circumstances, however, might thwart the goal of compensating investors if the freeze were to cause such disruption of defendants' business affairs that they would be financially destroyed. Thus, the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief.

Here, there is no danger that the freeze will disrupt the defendants' business affairs, to the detriment of those whom the defendants have defrauded. They are out of business, and their activities, as shown in the record, lead to the conclusion that, absent a freeze, they would either dispose of, or conceal, or send abroad, all of the moneys that they have obtained from their victims. *See also International Controls Corp. v. Vesco*, 2 Cir., 1974, 490 F.2d 1334, 1351.

We hold that the court had the power to make the freeze order. We do not pass upon the validity of all of its terms, because that question is not before us.

V. *The Power to Compel Production of Documents and the Fifth Amendment.*

The court's preliminary injunction contained the following:

> ORDERED, that defendants Singer, Luks, Quinlan and Wiehoff shall each file, with counsel for the Federal Trade Commission within twenty days of the issuance of this order, an accounting of all property, real of [sic] personal, wherever located whether domestic or foreign, which they own, directly or indirectly, in whole or in part, or otherwise have an interest in, . . .

In their motion to modify the injunction, appellants argued that this provision required them to incriminate themselves. The judge agreed, and modified the provision to read:

> ORDERED, that defendants Singer, Luks, Quinlan, and Weihoff, and each of them, shall file, within twenty days of the issuance of this order, all current accountants' reports, bank statements, documents indicating title to real or personal property, and other indicia of ownership or interest in property of any of the defendants, which indicia of ownership or interest are now in any of the aforenamed defendants' actual or constructive possession.

██ The Commission construes this provision as referring to documents created by third parties. We also so construe it. As so construed, the order is valid. The judge cited *Fisher v. United States*, 1976, 425 U.S. 391, 410 n.11, 96 S.Ct. 1569, 1580 n.11, 48 L.Ed.2d 39, which deals with an order requiring production of such documents, and upholds the order.

Appellants argue, however, that the act of producing documents in response to the order may amount to authenticating them, and thus be compelled self-incrimination. In the case of particular documents, that might be so. But that possibility is not a valid ground for holding that the order is void. *See Fisher, supra*, 425 U.S. at 411–413, 96 S.Ct. at 1581–1582 and n.13. Clearly, under *Fisher*, production under compulsion of the order may or may not amount to authentication, and, if it does, would not necessarily be a violation of the Fifth Amendment.

If, as to a particular document, an appellant believes that his producing it may, by authenticating it, incriminate him, he must make a showing to that effect, so that the court can evaluate it. He cannot simply refuse to comply with the order at all. *See Davis v. Fendler*, 9 Cir., 1981, 650 F.2d 1154, 1155, 1159–1160.

The orders appealed from are affirmed.