Robert E. ANTHONY, Clifton L. Coleman, M.K. Adams and George H. Glasby, individually, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

TEXACO, INC.,
Defendant-Counterclaimant-Appellee,

Synergy Group Incorporated, and Skelgas Group Incorporated, Defendants-Appellants,

New Skelgas, Inc., Defendant.

No. 85–2461.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 1986.

James F. Bullock (Floyd L. Walker with him on brief) of Pray, Walker, Jackman,

Williamson & Marlar, Tulsa, Okl., for plaintiffs-appellees.

Randall B. Robinson (Ricks P. Frazier with him on brief) of Texaco, Inc., White Plains, N.Y., for defendant-counterclaimant-appellee.

J. Ronald Petrikin of Gable & Gotwals, Tulsa, Okl., for defendants-appellants.

Before MOORE, SETH, and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an interlocutory appeal from an order of the United States District Court for the Northern District of Oklahoma granting the plaintiffs' motion to prevent the transfer of $350,000 to Synergy Group Incorporated (Synergy) or its affiliate, Skelgas Group Incorporated (Skelgas Group). Pursuant to the order, the funds are being held in an interest-bearing escrow account pending resolution of the merits. Synergy primarily argues that the court abused its discretion in failing to apply the strict standards for prejudgment attachment under Fed.R.Civ.P. 64 and Okla.Stat.Ann. tit. 12, §§ 1151–1153 (West 1961 & Supp.1985). We disagree and affirm the order.

## I.

This action has been brought by disgruntled employees of a merged and subsequently divested company who claim their contractual rights have been breached and they are entitled to severance pay benefits. Plaintiffs Robert Anthony, Clifton Coleman, M.K. Adams, and George Glasby were employed by Skelgas, Inc. (Skelgas), a subsidiary of Getty Oil Company (Getty), when that company merged with Texaco, Inc. (Texaco), on February 17, 1984.

The Merger Agreement, executed by Texaco and Getty officers on January 6, 1984, included a section on employee benefits in which Texaco agreed to provide former Getty employees with similar benefits for a limited time after the merger. Texaco also agreed in section 4.3(e) to provide certain severance payments to nonunion employees "if at any time prior to two (2) years after the Effective Time [February 17, 1984] any such employee is terminated involuntarily, or leaves Texaco or the Surviving Corporation within sixty (60) days of being reduced in position or salary."

Allegedly to implement section 4.3(e), Texaco instituted the Getty Merger Severance Program on July 17, 1984. The documents distributed to the employees explained eligibility requirements and procedures for filing claims with the program administrator. Although the program was not separately funded, it was registered with the federal government as an ERISA plan.

On November 2, 1984, Texaco agreed to sell the assets of Skelgas to Synergy. In section 4.3(a) of the Asset Purchase Agreement, Synergy agreed to offer the former Texaco-Skelgas employees comparable positions and salaries, to provide commensurate benefit plans until February 17, 1986 (two years after the original Texaco-Getty merger), and to pay severance payments to any nonunion employee "who prior to February 17, 1986, is terminated involuntarily by Buyer [Synergy] or leaves the employment of Buyer within sixty (60) days of being reduced in position, salary or hourly rate." Texaco agreed to indemnify Synergy for any claims or liabilities arising out of the Merger Agreement if Synergy complied with its obligations under section 4.3(a) of the Asset Purchase Agreement. Texaco also agreed not to hire away any former Skelgas employees for three years after the purchase by Synergy.

On November 30, 1984, Synergy assigned all of its rights and duties under the Asset Purchase Agreement to Skelgas Group, a holding company owned by four of the five Synergy shareholders. Skelgas Group owns stock in twelve corporations, which own assets in twelve states. The more than 500 former employees of Skelgas became employees of the twelve New Skelgas, Inc. corporations. The plaintiffs were employed by New Skelgas, Inc., an Oklahoma corporation (New Skelgas).

Anthony and Coleman resigned from New Skelgas in January 1985. Adams resigned in April 1985. Glasby is still employed by New Skelgas.

The plaintiffs sued Texaco in state court claiming they were "involuntarily terminated" by the sale of the Skelgas assets on November 30, 1984.[1] They sought class certification on behalf of all former Skelgas employees, a declaratory judgment that they were involuntarily terminated and therefore entitled to severance payments under section 4.3(e) of the Merger Agreement, and a temporary restraining order staying the sixty-day clause under section 4.3(e) until the employees' rights against Texaco under the Merger Agreement were determined. The state court granted the plaintiffs' petition on January 15, 1985.

Texaco removed the case to federal district court, claiming federal jurisdiction under 29 U.S.C. §§ 1001 et seq., 1132(f) (Employee Retirement Income Security Act [ERISA]), 28 U.S.C. § 1332 (diversity of citizenship), and 28 U.S.C. § 1331 (federal question jurisdiction of the Thirteenth Amendment claim). Texaco attached a copy of the Getty Merger Severance Program to its petition. The district court overruled plaintiffs' subsequent motion for remand and held that ERISA governed the plaintiffs' claims against Texaco and vested jurisdiction in the federal district court. Subsequently, the court ordered joinder of Synergy, Skelgas Group, and New Skelgas as necessary parties.

In their third amended complaint, the plaintiffs allege that all former Skelgas employees were involuntarily terminated by Texaco on November 30, 1984, when the Skelgas assets were sold, and they are entitled to severance benefits from Texaco under section 4.3(e) of the Merger Agreement. Anthony, Coleman, and Adams allege that after the sale, they were reduced in pay and position by New Skelgas and are therefore entitled to severance benefits under section 4.3(e) of the Merger Agreement and section 4.3(a) of the Asset Purchase Agreement.[2] The plaintiffs also allege that the employee benefit plans offered by Synergy and its affiliates do not meet the contractual requirements of section 4.3(a) of the Asset Purchase Agreement. Finally, Adams and Glasby also claim they are entitled to damages from Synergy under ERISA for retaliatory actions taken against them by Synergy, Skelgas Group, and New Skelgas when corporate officers learned of the pending lawsuit.

On May 1, 1985, the plaintiffs filed a motion for an order forbidding the transfer of certain funds between Texaco and Synergy. The motion was later supplemented by an affidavit filed by Texaco indicating that it owed Synergy more than $1 million in overpayment for the Skelgas assets. Texaco expressed concern about paying twice if the plaintiffs prevailed in their claims for reduction in pay and position against Synergy and its affiliates but could not recover from Synergy. The court issued a temporary restraining order on May 16, 1985, prohibiting the transfer of the funds. After a hearing on August 26, 1985, all but $700,000 was released to Skelgas Group. On motions by the appellants, the escrow account has since been reduced to $350,000.

In its August 26 order, the court stated that consideration of the motion was gov-

---

1. In their original complaint in state court, the plaintiffs also alleged that the sale of Skelgas assets was "contrary to the XIII Amendment to the U.S. Constitution" prohibiting involuntary servitude. Later, the plaintiffs retracted this allegation explaining that they had "indulged" in a "measure of facetiousness" when they had made the "hyperbolic remark" that the contract violated the Thirteenth Amendment. We question the practice of engaging in such facetiousness in light of the ethical constraints of Fed.R.Civ.P. 11

and Okla.Stat.Ann. tit. 12, § 2011 (West Supp. 1985).

2. On April 1, 1985, the district court held that New Skelgas employees who intended to file claims for severance payments based on a reduction in pay or position by New Skelgas must resign by April 18, 1985. Twelve employees, including the three represented in this case, resigned before the deadline. The district court denied a motion for intervention filed by the nine former employees of New Skelgas affiliates located in other states.

erned by § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3),[3] and Fed.R.Civ.P. 65. The court held that the plaintiffs made the requisite showing to support a preliminary injunction under Rule 65. The court found the plaintiffs were likely to ultimately prevail in their reduction in pay or position claim and would be irreparably harmed if the defendants were not financially able to meet their obligations. The court noted the complexity of the interlocking Synergy, Skelgas Group, and New Skelgas corporate structures and the questionable financial condition of the corporations. The court concluded that the balance of harms in enjoining the transfer of funds favored the plaintiffs. This interlocutory appeal followed.

## II.

■ The defendants argue that the court abused its discretion in ordering the funds frozen because the plaintiffs did not satisfy the Oklahoma creditor's remedies statutes governing prejudgment attachment, Okla. Stat.Ann. tit. 12, §§ 1151–1153 (West 1981 & Supp.1985).[4] The defendants contend the court erred in basing its order granting provisional relief on ERISA and Rule 65 rather than on Rule 64.[5] We disagree and hold that the district court order prohibiting transfer of the funds was a valid exercise of the court's equitable jurisdiction.

"Rule 65 concerns the procedure for issuing a preliminary injunction. The substantive basis and the jurisdictional authority for use of this procedure must be sought elsewhere." *Federal Trade Commission v. H.N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir.1982). We, therefore, begin by reviewing the trial court's stated authority under ERISA to issue a preliminary injunction.[6]

The district court order is not unprecedented. In *Foltz v. U.S. News & World*

---

**3.** Section 1132(a)(3) provides in pertinent part:
    A civil action may be brought ... by a participant ... (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

**4.** It is undisputed that the plaintiffs failed to file an affidavit with the court clerk indicating the grounds upon which an order of attachment should issue. Section 1152. Nor did the plaintiffs file a bond in the sum of twice the amount held in the escrow account. Section 1153 (Supp.1985). The court determined that a $20,000 bond was adequate security pursuant to Rule 65(c). The bond was reduced to $10,000 when the funds held in escrow were reduced by half.

**5.** Rule 64, in pertinent part, provides:
    At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable....

**6.** The plaintiffs' arguments in this appeal are perplexing. They contend that ERISA provides the jurisdictional basis for the court's issuance of a preliminary injunction under Rule 65. ERISA authorization under § 1132(a)(3) was also argued by plaintiffs' counsel to the trial court at the hearing on the motion to freeze assets. Moreover, the third amended complaint includes a claim for damages under § 1140 of ERISA for retaliatory actions.
    Nevertheless, the plaintiffs, as well as Synergy and its affiliates, also argue that the plaintiffs' claims for reduction of pay and position against the appellants are not governed by ERISA but by traditional principles of contract law. The plaintiffs contend that "the issue of whether Plaintiffs' claims against Texaco are governed by ERISA is not presently before this Court." (Footnote omitted.) They ask us to reverse the trial court's ruling that the plaintiffs' claims against Synergy are ERISA claims.
    The plaintiffs read too much into the trial court's ruling. The court did not find that the elements of an "employee welfare benefit plan" under 29 U.S.C. § 1002(1) had been met, nor could it. Questions relating to the plaintiffs' rights against the original defendant Texaco and against Synergy and its affiliates, which allegedly agreed to assume many of Texaco's obligations to Skelgas employees, reach the very essence of this case. As in any case in which a party moves for a provisional equitable remedy,

*Report,* 760 F.2d 1300 (D.C.Cir.1985), former employees of the news magazine brought an action under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B),[7] challenging the undervaluation of their interests in the company and in the Profit-Sharing Plan of the News (Plan). Prior to trial, the plaintiffs sought to enjoin the Plan from distributing $141 million in assets to the current participants until the court determined whether the former employees were entitled to further benefits. The court of appeals concluded that prejudgment relief, in the form of an asset freeze, would be warranted under ERISA if the movant satisfied the traditional requirements for the issuance of a preliminary injunction. The court stated that "it would do violence to Congress' intent in carefully framing an arsenal of remedial legal weapons in this watershed statute not to preserve the *status quo* to the extent of keeping alive an otherwise viable, statutorily provided cause of action." *Foltz,* 760 F.2d at 1309. The court of appeals noted that monetary relief generally is not awarded in a money damages case prior to a determination of liability and the extent of damages but emphasized that the express intent of Congress in enacting the ERISA scheme was to protect beneficiaries and participants entitled to benefits under ERISA-covered plans. *See* 29 U.S.C. § 1001. The court held that the "[i]rrevocable loss of a cause of action" would not serve this Congressional purpose; therefore, it was proper for the court to protect its ability to render a meaningful remedy under the statute. *Foltz,* 760 F.2d at 1308–09.

On remand, *Foltz v. U.S. News & World Report,* 613 F.Supp. 634 (D.D.C.1985), the district court granted the motion for a preliminary injunction, essentially freezing $29 million pending resolution of the merits. The court found the plaintiffs were likely to prevail in their claims against the Plan. In addition, the court found the plaintiffs would suffer irreparable harm by the loss of their cause of action because distribution of the Plan assets would leave insufficient funds from which plaintiffs' benefit claims could be satisfied. The assets frozen by the court represented the court's "realistic assessment of the plaintiffs' claim for unpaid benefits in the event the Plan is found liable." *Foltz,* 613 F.Supp. at 649.

The rationale employed in the *Foltz* cases is persuasive. The function of a preliminary injunction is to preserve the *status quo, Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980), thereby protecting the court's ability to render a meaningful decision on the merits. *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.,* 621 F.2d 683 (5th Cir. 1980). *See also Federal Trade Commission v. H.N. Singer, Inc.,* 668 F.2d 1107 (9th Cir.1982). It is also clear that Congress in enacting the comprehensive ERISA scheme infused it with traditional equitable principles[8] and provided the participants and beneficiaries "a panoply of remedial devices" to insure compliance. *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). *See* H.R.Rep. No. 533, 93d Cong., 2d Sess. 17, *reprinted*

---

the trial court's analysis of the merits was limited to whether there was a substantial likelihood of success. *Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir.1980).

Therefore, we also refrain from deciding at this early stage of litigation and upon the abbreviated record on interlocutory appeal whether the elements of an "employee welfare benefit plan" have been met. *See Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780 (10th Cir.1964). We are satisfied, however, for purposes of supporting the grant of provisional relief only, that ERISA applicability was adequately established.

7. Pursuant to § 1132(a)(1)(B), a plan participant or beneficiary can sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

8. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985); *Eaves v. Penn,* 587 F.2d 453 (10th Cir.1978); *Miner v. International Typographical Union Negotiated Pension Plan,* 601 F.Supp. 1390 (D.Colo.1985).

*in* 1974 U.S.Code Cong. & Ad.News 4639, 4655.

"[W]here the exercise of equity is necessary to effectuate congressional purpose, the court is not rigidly confined in its choice of remedies." *Interstate Commerce Commission v. Beehive State Agricultural Cooperative*, 575 F.2d 802, 804 (10th Cir.1978). In ERISA litigation under § 1132(a)(3), courts have issued preliminary injunctions compelling an employer to make delinquent contributions as required by collective bargaining agreements. *See Laborers Fringe Benefit Funds v. Northwest Concrete & Construction*, 640 F.2d 1350 (6th Cir.1981); *Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429 (N.D.Ohio 1982). Under § 1132(a)(5) courts have also exercised equitable jurisdiction to appoint receivers to administer funded plans pending resolution of breach of fiduciary duty claims. *Marshall v. Snyder*, 572 F.2d 894 (2d Cir.1978). Although these subsections expressly provide for equitable relief, courts have also described causes of action brought under § 1132(a)(1)(B) for recovery of accrued benefits as equitable in nature. *Cf. Turner v. CF & I Steel Corp.*, 770 F.2d 43, 47 (3d Cir.1985); *cert. denied*, ── U.S. ──, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Note, *The Right to Jury Trial in Enforcement Actions under Section 502(a)(1)(B) of ERISA*, 96 Harv.L.Rev. 737 (1982). Although the district court order freezing the assets expressly relied on subsection (a)(3), we think the plaintiffs' complaint more accurately states a claim for wrongfully withheld benefits under § 1132(a)(1)(B).[9] Under either subsection, however, the district court did not exceed its authority in issuing a preliminary injunction which effectively preserved these beneficiaries' causes of action as intended by Congress.

Finally, the application of this extraordinary provisional remedy in the context of ERISA suits also parallels the use of this remedy in other federal statutory contexts authorizing equitable relief. For example, similar action has been taken by courts to protect the *status quo* in cases brought under the securities laws,[10] *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1103–06 (2d Cir.1972); the Commodity Exchange Act,[11] *Commodity Futures Trading Commission v. Morgan, Harris & Scott, Ltd.*, 484 F.Supp. 669, 678 (S.D.N.Y.1979); the Bankruptcy Code,[12] *In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir.1985); and the Federal Trade Commission Act,[13] *Federal Trade Commission v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982).

In *Singer*, the court also rejected the argument that prejudgment attachment standards must be met before the corporate assets could be frozen:

> While it is true that the asset freeze has an effect comparable to that of an attachment, it is not an attachment. The fact that the conditions for attachment, normally a remedy in actions at law, might not be met does not imply that another and equitable provisional remedy is not available.

*Singer*, 668 F.2d at 1112.

The appellants argue that this case is indistinguishable from *Baxter v. United Forest Products Co.*, 406 F.2d 1120 (8th Cir.), *cert. denied*, 394 U.S. 1018, 89 S.Ct.

---

**9.** The court in *Livolsi v. Ram Const. Co.*, 728 F.2d 600 (3d Cir.1984), distinguishes actions under the two sections by suggesting that suits under subsection (a)(1)(B) are intended to protect a participant or beneficiary's personal and individual interest in the plan, while actions under (a)(3) "tend to be more broad-based, drawing the court's remedial focus to structural, systematic violations of the ERISA scheme." *Id.* at 602.

**10.** Securities Act of 1933 § 22(a), 15 U.S.C. § 77v(a); Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa.

**11.** Commodity Exchange Act § 6c, 7 U.S.C. § 13a–1.

**12.** 11 U.S.C. § 105(a).

**13.** Federal Trade Commission Act §§ 13(b), 19, 15 U.S.C. §§ 53(b), 57b(a)(1), (b).

1635, 23 L.Ed.2d 42 (1969), in which the court of appeals reversed an order sequestering monies owed the defendants by the plaintiffs pending resolution of the case on the merits. The appellate court held that the court erred in failing to apply the applicable state prejudgment attachment statute. We do not read *Baxter* as dispositive of this appeal. *Baxter* was a diversity case in which the plaintiffs sought both the benefit of their contract with the defendants for the sale of a business and damages for alleged misrepresentations. The sequestered funds were payments on the contract. In *Baxter*, there was no independent federal statutory basis for the exercise of the court's equity jurisdiction. That, however, is not the situation in this case where ERISA jurisdiction is implicated. Accordingly, we hold that the district court did not err in exercising its equitable jurisdiction under ERISA to freeze the assets owing to the defendant corporations.

### III.

Synergy and its affiliates also argue that, if the court was empowered to issue a preliminary injunction under Rule 65, the evidence was insufficient to support this measure of extraordinary relief. We do not agree.

The grant or denial of a preliminary injunction is entrusted to the discretion of the district court. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). Therefore, our review is limited to whether the court abused its discretion in freezing $350,000 in an interest-bearing escrow account. *Id.*

■ "The touchstone for obtaining such relief is a showing of irreparable harm coupled with a substantial likelihood of success on the merits." *Community Communications Co. v. City of Boulder, Colorado*, 660 F.2d 1370, 1375 (10th Cir.1981), *cert. dismissed*, 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982). However, where the plaintiff has adequately established irreparable harm and the balance of hardships tips in his favor, the probability-

of-success requirement can be relaxed. *Id.* *See also Kenai Oil & Gas, Inc. v. Department of Interior*, 671 F.2d 383 (10th Cir. 1982). In these circumstances it is "enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Community Communications*, 660 F.2d at 1375–76.

■ Synergy and its affiliates argue that the plaintiffs failed to meet their burden of proof with respect to the "irreparable harm" element. The appellants argue that there is evidence in the record that they could and would pay any judgment rendered against them.

Our review of the record, however, reveals evidence that the purchase of assets was a highly leveraged transaction, and consequently the Skelgas Group was involved in a "lock-box" arrangement with the lending bank.[14] In addition, several witnesses at the hearing testified that Synergy and its affiliates had failed to send them final paychecks, expense checks, and compensation for accrued vacation time when they resigned from the company. Finally, a New Skelgas employee testified that when she attempted to withdraw funds from a thrift account, which had been transferred from Texaco to the appellants after the sale of assets, her request was not processed in a timely fashion, the check she received was not for the total amount requested, and the company, soon after issuing the check, stopped payment on it.

In its order the court cited the "complexity of the corporate structure" and the "questionable financial condition of the corporations." These findings are supported in the record on appeal. The court also expressed concern that the plaintiffs would be irreparably harmed if they were "left to recover against only a corporate shell." Any such "hollow victory" would not be

---

**14.** A witness for Synergy testified that all New Skelgas assets were pledged to the loan, and the bank was in control of the company's receipts and expenditures.

answerable by money damages. *See Foltz,* 760 F.2d at 1309. In light of the evidence of the leveraged nature of the purchase and the showing of past irresponsibilities on the part of corporate officers, we hold the district court did not abuse its discretion in finding that the plaintiffs had satisfied the irreparable harm element.

In analyzing the balance of harms, the district court determined that any injury suffered by Synergy and its affiliates can be measured and is recoverable in an action for damages or by forfeiture of the security bond. The appellants argued at the hearing that they needed the funds to purchase inventory; however, they were unable to establish that any damages they would suffer by continuing to borrow on their line of credit for these purchases could not be accurately compensated. Therefore, the district court did not err in determining that the balance of harms favored the plaintiffs. The court correctly set the amount of the bond by measuring the difference in interest rates between what the appellants were paying for borrowed money and what the escrow account was earning. In addition, the court has continued to tailor the provisional relief to minimize any injury. *See Foltz,* 760 F.2d at 1310.

Synergy and its affiliates contend Rule 65 standards have not been met because the court found there is only a "likelihood," rather than a "substantial likelihood," that the plaintiffs would recover on the merits. However, because the plaintiffs have adequately satisfied the irreparable injury and balance of harms elements, the relaxed probability-of-success standard is applicable. *Community Communications,* 660 F.2d at 1375.[15]

During the pretrial stages of this case, the district court heard testimony from the employees who resigned because they felt their pay or position had been reduced. Much of this evidence is contested by the appellants, who argue that salaries re-

mained the same, while pay schedules and pay periods were adjusted slightly, and that nobody was demoted, although employees' responsibilities may have been changed. We are not prepared, on the strength of Synergy's denials alone, to reverse the trial court's evaluation of the evidence supporting the plaintiffs' claims. Moreover, we think the questions relating to the effect of the Merger Agreement, Asset Purchase Agreement, Getty Merger Severance Program, and Synergy's alleged assumption of the existing employee benefit obligations are "so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for further investigation." *Community Communications,* 660 F.2d at 1375.

Finally, Synergy and its affiliates argue the district court's order does not fulfill the requirements under Fed.R.Civ.P. 65(d) and 52(a) for specific findings of fact. There is, however, no danger of confusion about what is required by the order or the basis of the decision. *Mesa Petroleum Co. v. Cities Services Co.,* 715 F.2d 1425 (10th Cir.1983). Moreover, the record on appeal supports the court's order and indicates the court heard evidence on each element. *Koerpel v. Heckler,* 797 F.2d 858, 866 n. 4 (10th Cir.1986). Therefore, any lack of specific findings of fact is harmless error. *Id.*

Accordingly, we hold that the court did not abuse its discretion or exceed its jurisdiction in issuing the preliminary injunction. The order is affirmed.

---

**15.** The appellants do not argue that the court's order is contrary to the public interest, nor, in light of the purpose of ERISA, do they have any legal support for such a contention.